134 F.3d 981
 98 Cal. Daily Op. Serv. 660, 98 Daily Journal
D.A.R. 874
Arthur CALDERON, Warden, California State Prison, San
Quentin, Petitioner,
v.
The UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF CALIFORNIA, Respondent,
Freddie Lee Taylor, Real Party in Interest.
 No. 97-70567.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 25, 1997.
Decided Jan. 26, 1998.
 
 Joan Killeen, Supervising Deputy Attorney General, San Francisco, California, for petitioner.
 Nanci L. Clarence, Clarence & Snell, San Francisco, California, for real party in interest.
 Petition for Writ of Mandamus to the United States District Court for the Northern District of California. D.C. No. C-92-1627-MHP.
 Before: FARRIS, O'SCANNLAIN and HAWKINS, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We are asked to decide whether a district court may allow a habeas corpus petitioner to amend his petition to delete unexhausted claims and hold the amended petition in abeyance subject to further amendment reincorporating the deleted claims once they are litigated in state court.
 
 
 2
 * The real party in interest in this case, Freddie Lee Taylor, is a California prisoner sentenced to death for first degree murder. On July 10, 1995, Taylor filed a petition for a writ of habeas corpus in the District Court for the Northern District of California raising some forty-six separate claims, many of which were unexhausted. The State moved to dismiss the petition. The district court, Judge Marilyn Hall Patel presiding,[1] initially ruled that it would stay rather than dismiss the petition pending exhaustion in California state court. The State moved for reconsideration in light of several intervening Ninth Circuit cases holding that district courts may not stay "mixed" habeas petitions (petitions containing both exhausted and unexhausted claims), see Greenawalt v. Stewart, 105 F.3d 1268 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997), Calderon v. United States District Court (Gordon), 107 F.3d 756 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997), and Reutter v. Crandel, 109 F.3d 575 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 142, 139 L.Ed.2d 89 (1997).
 
 
 3
 On April 1, 1997, the district court issued a lengthy written order and held that it would allow Taylor to amend his original petition to delete the unexhausted claims and would hold in abeyance the amended petition while Taylor exhausted the deleted claims in state court. The district court also invited Taylor to file a second amended petition incorporating the newly exhausted claims after litigating them in the California courts.
 
 
 4
 In accordance with the district court's order, Taylor deleted the unexhausted claims from his original petition and filed his "First Amended Petition for Writ of Habeas Corpus" on April 30, 1997.
 
 
 5
 The State now petitions this court, pursuant to 28 U.S.C. § 1651(a)[2] and Federal Rule of Appellate Procedure 21, for a writ of mandamus or, in the alternative, a writ of prohibition, directing the district court to vacate the portion of its order holding in abeyance Taylor's amended petition pending his exhaustion of previously unexhausted claims in state court. The State argues that the district court's order circumvents the spirit, if not the letter, of the Supreme Court's decision in Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and this court's recent holdings in Greenawalt, 105 F.3d 1268, Gordon, 107 F.3d 756, and Reutter, 109 F.3d 575.
 
 
 6
 The legitimacy of the district court's self-titled "procedural device of withdrawal and abeyance" presents an important and difficult question of first impression in this circuit.
 
 II
 
 7
 The Supreme Court has declared that "[t]he supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power'...." Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953); see also Kerr v. United States District Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976) ("The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations.").[3] In an effort to implement that command, this court has adopted a five-part standard to govern the issuance of writs of mandamus:
 
 
 8
 The guidelines are: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he desires; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests persistent disregard for the federal rules; and (5) whether the district court's order raises new and important problems or issues of law of first impression.
 
 
 9
 In re Cement Antitrust Litigation, 688 F.2d 1297, 1301 (9th Cir.1982), aff'd, Arizona v. United States District Court, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). "[R]arely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is applicable. The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators." Bauman v. United States District Court (Union Oil), 557 F.2d 650, 655 (9th Cir.1977).[4] However, although all five factors need not be satisfied in order for mandamus to issue, "it is clear that the third factor, the existence of clear error as a matter of law, is dispositive." Executive Software North America, Inc. v. United States District Court (Page), 24 F.3d 1545, 1551 (9th Cir.1994).
 
 
 10
 The State contends (and Taylor does not seriously dispute) that the first two factors of the Cement standard are satisfied because the State effectively has no alternative procedural mechanism, such as direct appeal, by which timely to vindicate its interests, in light of the fact that the violation alleged in its petition--the circumvention of the "total exhaustion" requirement--will be complete at the moment the district court exercises jurisdiction. Similarly, the State contends (and Taylor does not seriously dispute) that the fifth factor is present, because the district court's order represents what appears to be the first attempt in this circuit to implement the "withdrawal-and-abeyance" procedure. Consequently, the parties appear to agree on one thing: the propriety of mandamus in this case turns predominantly, if not exclusively, upon the satisfaction of the third Cement factor.
 
 
 11
 In determining whether the third factor is satisfied, we recognize that a lesser showing is required in so-called "supervisory mandamus" cases, "where the petition raises an important question of law of first impression, the answer to which would have a substantial impact on the administration of the district courts." Cement, 688 F.2d at 1307. In such cases--one of which the instant case certainly seems to be--mandamus may issue upon a showing of ordinary (as opposed to clear) error:
 
 
 12
 [I]n supervisory mandamus cases involving questions of law of major importance to the administration of the district courts ... we see no legitimate reason for refraining from exercising our supervisory authority where we can determine that an error has been made but cannot, for whatever reason, characterize the error as "clearly" erroneous.
 
 
 13
 ... Moreover, [where a] petition represents a question of law of first impression, the resolution of which would have a substantial effect on the orderly and efficient administration of the courts, we might issue the writ even were we simply to conclude that the district court was in error.
 
 
 14
 Id.
 
 
 15
 With regard to the all-important third factor, both parties rest their mandamus arguments on their respective positions as to the merits of the district court's action, and argue that the court's order was--or was not, as the case may be--erroneous as a matter of law. Consequently, the mandamus issue in this case is inextricably tied to the substantive question whether the district court's "withdrawal-and-abeyance" procedure was a valid exercise of that court's discretion. If we conclude that the district court's order was proper, then mandamus is, by definition, an inappropriate remedy. If, however, we conclude that the district court's order was contrary to settled law, then under the lower standard applicable in supervisory mandamus situations, mandamus will lie. We therefore turn, without further delay, to the merits of the State's petition.
 
 III
 
 16
 * The "exhaustion" doctrine has long been one of the pillars of federal habeas corpus jurisprudence. See, e.g., United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17-19, 46 S.Ct. 1, 2-3, 70 L.Ed. 138 (1925); Ex Parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886). Under the present-day codification of that doctrine, habeas relief is not available "unless it appears that the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(b)(1)(A). In Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court addressed for the first time the proper method for disposing of habeas petitions containing both exhausted and unexhausted claims. The Court adopted a rule of "total exhaustion" and directed that "a district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." Id. at 510, 102 S.Ct. at 1199.
 
 
 17
 Unfortunately, not all lower courts took the Court's ruling in Rose in stride. Subsequent to Rose, in Neuschafer v. Whitley, 860 F.2d 1470 (9th Cir.1988), this court proposed an "alternative" procedure for dealing with mixed petitions (a procedure that was, quite frankly, in stark conflict with the central teaching of Rose ). The Neuschafer court suggested in a footnote that "[w]hen a petitioner has not exhausted his state remedies before filing a federal habeas petition, a district court may hold the [mixed] federal petition in abeyance, issue a stay of execution, and allow the petitioner an opportunity to exhaust his state remedies." Id. at 1472 n. 1.
 
 
 18
 On the heels of Neuschafer (and in the face of Rose ), the Ninth Circuit's Death Penalty Task Force promulgated model local rules for the district courts. One of these rules, adopted by the Northern District of California, was Local Rule 296, which specifically codified a Neuschafer like "stay-and-abeyance" procedure for mixed petitions:
 
 
 19
 If the petition indicates that there are unexhausted claims for which a state court remedy is still available, petitioner will be granted a sixty (60) day stay of execution in which to seek a further stay from the state court in order to litigate the unexhausted claims in state court. During proceedings in state court, the proceedings on the petition will be stayed. After state court proceedings have been completed, petitioner may amend the petition with respect to the newly exhausted claims.
 
 
 20
 L.R. 296-8(e).
 
 
 21
 In a trio of recent cases, this court has, at long last, made it manifestly clear that both the Neuschafer dictum and Local Rule 296-8(e) are inconsistent with the mandate of Rose, and that the "stay-and-abeyance" procedure for mixed petitions that they begot will no longer be considered a valid exercise of judicial power. In Greenawalt v. Stewart, 105 F.3d 1268 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997), the court rejected an argument that the district court had abused its discretion in dismissing, rather than staying, a mixed petition, and explicitly refused to follow the Neuschafer court's dictum:
 
 
 22
 First, [petitioner] argues that the district court abused its discretion by dismissing his preliminary petition instead of staying it while he exhausted his claims in state court. [Petitioner] concedes, however, that his preliminary petition contained an unexhausted claim.... The Supreme Court repeatedly has instructed the district courts to dismiss "mixed" petitions containing any unexhausted claims.
 
 
 23
 Id. at 1273. The Greenawalt court's conclusion was echoed in Calderon v. United States District Court (Gordon), 107 F.3d 756 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997). Noting that "[t]he district court [had] reached its erroneous conclusion by relying on our opinion in Neuschafer v. Whitley," the court stated:
 
 
 24
 We first hold that the district court erroneously stated ... that dismissal of mixed habeas petitions, as required by Rose v. Lundy, "is not the rule in the Ninth Circuit." Because [petitioner's] amended habeas corpus petition undisputedly contained unexhausted state claims, dismissal of the federal petition was required.
 
 
 25
 Id. at 760 (internal citation omitted). Finally, in Reutter v. Crandel, 109 F.3d 575 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 142, 139 L.Ed.2d 89 (1997), the court ruled that "[t]he unexhausted first federal claim ... prevents consideration of [the prisoner's] petition. The petition is mixed and so requires dismissal. [The prisoner] may strike the unexhausted claim and resubmit his petition to the district court." Id. at 578 (internal citation omitted).[5]
 
 
 26
 In light of Greenawalt, Gordon, and Reutter, the district court in its April 1, 1997 order candidly conceded that "the rule in the Ninth Circuit is now that a mixed petition must be dismissed or the unexhausted claims stricken."
 
 B
 
 27
 The district court discovered a relatively simple way around the Greenawalt-Gordon-Reutter proscription against holding mixed petitions in abeyance pending exhaustion in state court. In fact, all told, the procedure the district court followed involved only three essential steps: first, it allowed Taylor to amend his mixed petition to delete the unexhausted claims; second, it stayed and held in abeyance the amended, fully exhausted petition pending Taylor's exhaustion of the previously unexhausted claims in California state court; and third, it suggested that it would allow Taylor to amend his petition for a second time after litigating his claims in state court in order to fold the newly exhausted claims back into his original habeas petition.
 
 
 28
 The State insists that, viewed holistically, the district court's "withdrawal-and-abeyance" procedure is merely a "subterfuge"--an end run around the exhaustion and abuse-of-the-writ principles, the very principles that recent Supreme Court and Ninth Circuit cases have attempted to fortify, see, e.g., McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); Rose, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379; Greenawalt, 105 F.3d 1268. The district court, the State complains, essentially "allowed Taylor to follow the identical procedure that he would have followed under the local rule, except that the stayed petition is an exhausted one rather than a mixed one. It defeats the purposes of the exhaustion and abuse of the writ doctrines just as effectively as if the petition was mixed, however." Petition for Writ of Mandate, or in the Alternative, for Writ of Prohibition at 22 (hereinafter "Petition"). The State argues that "[b]y employing this technique, the district court circumvent[ed] the rulings of Rose, Greenawalt, and Gordon and effectively allow[ed] itself to be used 'merely as a jurisdictional parking lot.' " Petition at 32 (quoting Sterling v. Scott, 57 F.3d 451, 454 (5th Cir.1995), cert. denied, 516 U.S. 1050, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996)). Petition at 32.
 
 
 29
 The State raises some rather serious allegations. We must therefore carefully scrutinize each step of the district court's order--amendment, abeyance, and re-amendment--to determine its consistency with established law.
 
 
 30
 * The State does not question the district court's authority to permit Taylor to amend his original petition by deleting the unexhausted claims. Nor could it. The Supreme Court in Rose specifically provided habeas petitioners with the option of amending their applications to delete unexhausted claims rather than suffering a dismissal, see Rose, 455 U.S. at 520, 102 S.Ct. at 1204 ("[The petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims."), and the rule of Rose allowing amendment is well-supported by Ninth Circuit precedent, see, e.g., Reutter, 109 F.3d at 578 ("[Petitioner] may strike the unexhausted claim and resubmit his petition to the district court."). Moreover, as the district court concluded, Federal Rule of Civil Procedure 15(a) also required that it give Taylor an opportunity to amend his petition.[6] Because the State had not yet filed its "responsive pleading" at the time Taylor sought leave to amend, Taylor had the right, in accordance with Rule 15(a), "to amend [his] pleading once as a matter of course...." Fed.R.Civ.P. 15(a).
 
 2
 
 31
 The State focuses its critique upon the second step of the district court's analysis. Although Taylor is entitled to delete the unexhausted claims from his petition rather than suffer a dismissal, he is not entitled, the State contends, to have his amended petition held in abeyance pending exhaustion; rather, the State insists, it is at liberty to litigate the exhausted claims "forthwith." Petition at 23.
 
 
 32
 In making its anti-abeyance argument, the State takes great pains to distinguish Taylor's case from Fetterly v. Paskett, 997 F.2d 1295 (9th Cir.1993). In Fetterly, several months after a habeas petitioner had filed a fully exhausted petition in federal district court, his newly-appointed attorney discovered a new claim, one that had not previously been asserted in state proceedings. See id. at 1297. In light of his discovery, he requested that the district court stay the habeas proceedings while he exhausted the newly identified claim in state court. See id. at 1297-98. The district court, however, refused to grant the stay. See id. at 1298. On appeal, this court concluded that the district court's refusal constituted an abuse of discretion. Under the unique circumstances of that case, the court held, the district court was not only permitted, but required, to stay proceedings on the exhausted petition pending exhaustion in state court. See id. at 1301.
 
 
 33
 The State contends--and indeed the district court concluded--that Fetterly is not squarely applicable to Taylor's petition because, unlike the petitioner in Fetterly, "Taylor was aware of his unexhausted claims before he filed his federal petition." Petition at 28 (emphasis in original). We agree. However, the fact that the district court was not required, under Fetterly, to hold Taylor's exhausted petition in abeyance does not necessarily imply that the district court was without discretion to do so. Indeed, there is language in Greenawalt suggesting that district courts do indeed have the authority to take such a step. In distinguishing Fetterly, the Greenawalt court pointed to the fact that whereas it dealt with a mixed petition (which, under Rose, it was required to dismiss), the Fetterly court dealt with a fully exhausted petition (over which the district court legitimately had jurisdiction). Simply put, Fetterly was correctly decided, the Greenawalt court concluded, because "[a] district court has discretion to stay a petition which it may validly consider on the merits." Greenawalt, 105 F.3d at 1274.[7] Invoking that very passage from the Greenawalt decision, the district court held that once the unexhausted claims "are removed from the petition here, this court could consider it on the merits; therefore the court may stay it."[8]
 
 
 34
 The State suggests that the language in Greenawalt upon which Taylor relies should be strictly limited to the unique situation presented in Fetterly, namely, in which a new lawyer discovers new, previously unexhausted claims. At least on its face, however, the disputed language betrays no such limitation. Although the Greenawalt court did indeed cite Fetterly as an instance of legitimate petition-staying, the context in which the court spoke indicates that it intended, by invoking Fetterly, to draw a bright line between the staying of fully exhausted petitions, which it deemed appropriate, and of mixed petitions, which it deemed inappropriate:
 
 
 35
 In Fetterly, we held that a district court should have stayed, rather than dismissed, a valid habeas corpus petition containing only exhausted claims to give the petitioner time to exhaust several newly-discovered claims in state court. A district court has discretion to stay a petition which it may validly consider on the merits. But Greenawalt argues that the district court should have stayed a petition which, under Rose, it was obliged to dismiss immediately. Fetterly does not support that proposition.
 
 
 36
 Greenawalt, 105 F.3d at 1274 (internal citations omitted) (emphasis added).[9]
 
 
 37
 When pressed at oral argument, the State was unable to muster any specific support for its assertion that district courts do not have discretion to stay fully exhausted petitions and that habeas petitioners who amend their applications to delete unexhausted claims must proceed immediately upon the exhausted ones. In response to the question whether it had "any authority that says a district court does not have the discretion to stay a petition containing only exhausted claims," the State frankly conceded that it did "not have specific authority that the district court has no such authority to do that."[10] In light of Greenawalt--which on its face certainly appears to confer power upon district courts to stay fully exhausted petitions--and the State's inability to cite to the panel any contrary authority, we cannot say that the district court erred in holding Taylor's amended, exhausted habeas petition in abeyance.[11]
 
 3
 
 38
 Finally, the State challenges that portion of the district court's order specifically directing that "[u]pon completion of state proceedings, petitioner shall file a second amended petition" folding into the abeyant petition the newly exhausted claims. The State contends that any "subsequent amendment of a formerly exhausted petition to add newly exhausted claims ... could be barred as an abuse of the writ." Petition at 24. On that score, the State is clearly correct. In Rose, the Supreme Court explicitly warned habeas petitioners that, if they opted to amend rather than to take a dismissal, they "risk[ed] forfeiting consideration of [their] unexhausted claims in federal court" under abuse-of-the-writ principles. Rose, 455 U.S. at 520, 102 S.Ct. at 1204; see also Rules Governing Section 2254 Cases, Rule 9(b); McCleskey, 499 U.S. at 493-96, 111 S.Ct. at 1469-71. Indeed, Taylor candidly conceded at oral argument that his anticipated attempt to re-amend his petition to add previously unexhausted claims will be subject to an abuse-of-the-writ challenge.
 
 
 39
 The State's challenge to the "re-amendment" portion of the district court's order, however, is premature. Although the district court invited Taylor to file a second amended petition after exhausting his previously unexhausted claims in the California system, it did not indicate how it would ultimately rule on such motion. In fact, in its oral ruling, the district court specifically declined to express an opinion on the re-amendment issue, believing that to do so "would be advisory at best." The State itself acknowledged at oral argument that "we are not at that point yet because [Taylor] ha[s] not come back with the [second] amended petition." We agree with the district court that any ruling as to the legitimacy of a step not yet taken would be tantamount to an advisory opinion. We therefore do not reach the issue.
 
 IV
 
 40
 There is, we must concede, much force to the State's position. We understand the State's frustration. If the district court allows Taylor--as it has suggested it might--further to amend his abeyant petition to add previously unexhausted claims, the circle will indeed be complete. Taylor will have successfully achieved precisely what Greenawalt, Gordon, and Reutter forbid: the staying and holding in abeyance of a habeas petition that, at least when it came through the courthouse door, contained both exhausted and unexhausted claims. Unfortunately, however, on mandamus review, frustration is not enough. Rather, the mandamus petitioner must isolate and distinctly articulate the precise legal error that the offending official committed. The State has not discharged that burden in this case. This case is not about whether or not the rule articulated in Greenawalt allowing district courts to hold fully exhausted petitions in abeyance is a good rule, or whether that rule might on occasion spawn mischief. Rather, our jurisdiction is limited to determining whether or not the district court followed the Greenawalt rule as articulated. Consequently, notwithstanding any substantive concerns regarding the "withdrawal-and-abeyance" procedure that we might have, we are simply unable--even under the lower standard applicable in supervisory mandamus cases--to issue the writ to the district court at this time. The petition for a writ of mandamus is
 
 
 41
 DENIED.
 
 
 
 [1]
 Subsequent to the issuance of the order that is the subject of the government's petition, Judge Patel was elevated to the post of Chief Judge of the Northern District
 
 
 [2]
 The All Writs Act, 28 U.S.C. § 1651(a), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."
 
 
 [3]
 The writ of prohibition is the "fraternal twin" of its more familiar sibling, the writ of mandamus. See Richard H. Fallon, Daniel J. Meltzer & David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1668 (4th ed.1996). The two are evaluated under an identical standard. See Guam v. District Court of Guam, 641 F.2d 816, 820 (9th Cir.1981) ("The writs of mandamus and prohibition are drastic remedies, to be used only in extraordinary situations.")
 
 
 [4]
 For instance, the final two factors, by definition, generally do not coexist: "[T]he fourth contemplates a case presenting an oft-repeated error, and the fifth a case presenting a novel question. Where one of the two is present, the absence of the other is of little or no significance." United States v. Harper, 729 F.2d 1216, 1222 (9th Cir.1984). In this case, we are concerned with the fifth factor, and not the fourth
 
 
 [5]
 Other circuits similarly disallow the holding in abeyance of mixed habeas petitions. See, e.g., Christy v. Horn, 115 F.3d 201 (3d Cir.1997); Victor v. Hopkins, 90 F.3d 276 (8th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1091, 137 L.Ed.2d 224 (1997)
 
 
 [6]
 Rule 15(a) applies to habeas corpus actions with the same force that it applies to garden-variety civil cases. See 28 U.S.C. § 2242 (providing that habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); see also Withrow v. Williams, 507 U.S. 680, 696 n. 7, 113 S.Ct. 1745, 1755 n. 7, 123 L.Ed.2d 407 (1993)
 
 
 [7]
 Other circuits endorse similar rules and permit the staying of fully exhausted petitions. See, e.g., Burris v. Farley, 51 F.3d 655, 658-59 (7th Cir.1995) (suggesting that it would be permissible for a habeas petitioner to "fil[e] a petition raising all exhausted issues and ask[ ] the court for a stay until the remaining issues have been exhausted"); Thompson v. Wainwright, 714 F.2d 1495, 1498 (11th Cir.1983) ("[A] district court having before it a habeas petition containing only exhausted claims may continue the case at the petitioner's request pending his presenting to the state courts other claims that are not included in the petition and have not been exhausted.")
 
 
 [8]
 The district court found that a number of factors counseled in favor of its exercising its discretion to grant the stay: (1) in filing a mixed petition in the first instance, Taylor had relied in good faith on Local Rule 296-8(e), which was still valid prior to the recent decisions in Greenawalt, Gordon, and Reutter; (2) if the district court denied the stay, then Taylor would have to abandon temporarily the unexhausted claims and litigate them in a subsequent petition, resulting in piecemeal litigation; and (3) Taylor did not appear to have sought the stay "to delay, to vex, or to harass."
 
 
 [9]
 Ironically, in its original motion for reconsideration, filed before the specter of amendment or deletion had surfaced (and, consequently, at a time when Taylor's petition was still mixed and the State's litigation strategy was understandably somewhat different), the State appeared to cite the Greenawalt passage for the very proposition that it now seeks to deny: exhausted petitions may be stayed, mixed petitions may not--period. Not surprisingly, in the wake of the district court's decision to permit amendment--rendering Taylor's petition exhausted rather than mixed--the State abandoned its original interpretation of the Greenawalt language in favor of the more limited construction it now submits. Unfortunately for the State, we believe that its original interpretation--the interpretation now urged by Taylor--is the more natural one
 
 
 [10]
 In its opening remarks during oral argument, the State suggested that Rose itself required that habeas petitioners who choose to amend their petitions to excise unexhausted claims must proceed immediately on the exhausted claims that remained: "[Under Rose,] the petitioner may ... resubmit the petition containing exhausted claims. If he does that, he must proceed on the exhausted claims." As the cited colloquy indicates, however, the State eventually backed away from that position. And rightly so. Although the Supreme Court referred on three separate occasions in Rose to the dismissal and amendment options available to habeas petitioners who submit mixed petitions, the Court did not, as the State originally suggested, intimate that those petitioners who opted for amendment were required to proceed posthaste on their remaining claims. See Rose, 455 U.S. at 510, 102 S.Ct. at 1199; id. at 520, 102 S.Ct. at 1204; id. at 520-21, 102 S.Ct. at 1204-05
 The State also urged at one point during its argument that "Greenawalt says you cannot get a stay." Greenawalt did, as we have seen, hold that district courts may not stay a mixed petition; however, as we have also seen, contrary to the State's position, the Greenawalt court concluded that district courts do possess the authority to stay fully exhausted petitions.
 
 
 [11]
 We emphasize that our decision in no way grants district courts carte blanche to stay even fully exhausted habeas petitions. We can, of course, imagine situations in which a district court might be found to have abused the very discretion that Greenawalt appears to afford. It could not, for instance, stay habeas proceedings indefinitely pending exhaustion in state court, nor could it hold in abeyance the application of a petitioner who merely sought to stall the habeas corpus process. This, however, is not such a case; there was no abuse of discretion here. See supra note 8