187 F.3d 1096 (9th Cir. 1999)
 SAN JOSE MERCURY NEWS, INC.,Petitioner,
v.
U.S. DISTRICT COURT -- NORTHERN DISTRICT (SAN JOSE),Respondent, LORA SALDIVAR; SHANNON CALBY; CITY OF MOUNTAIN VIEW,Real Parties in Interest.
 No. 99-70062
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted July 16, 1999--
Filed August 13, 1999
 
 [Copyrighted Material Omitted]
 Edward P. Davis, Jr., Gray, Cary, Ware & Friedenrich, Palo Alto, California, for the petitioner.
 Gregory E. Stubbs and H. Christopher Hittig, Stubbs, Hittig & Leone, San Francisco, California, for the City of Mountain View, real party in interest.
 Vanessa A. Zecher, San Jose, California, for Lora Saldivar and Shannon Calby, real parties in interest.
 Petition for Writ of Mandamus to Review an Order Entered by the United States District Court for the Northern District of California James Ware, District Judge, Presiding. D.C. No. CV-96-20718-JW.
 Before: Mary M. Schroeder, Betty B. Fletcher, andCynthia Holcomb Hall, Circuit Judges.
 OPINION
 B. FLETCHER, Circuit Judge:
 
 
 1
 The San Jose Mercury News, Inc. ("Mercury News") petitions for mandamus in an effort to gain access to an investigatory report commissioned by the City of Mountain View ("Mountain View") in connection with a sexual harassment suit brought by two female police officers ("Plaintiffs") against Mountain View and its police department ("Defendants"). In order to obtain the report, the Mercury News sought permissive intervention in the action before the district court. The district court denied the motion, prompting the newspaper's petition for mandamus relief. We grant the writ, vacate the district court's order denying the Mercury News' motion to intervene, and remand for further proceedings.
 
 I.
 
 2
 The relevant facts are undisputed. In early 1996, the Plaintiffs filed discrimination charges with the EEOC against the Defendants. After receiving "right to sue" letters from the EEOC, the Plaintiffs filed the underlying suits alleging, among other things, that the Mountain View Police Department maintained a work environment hostile to its female employees in violation of state and federal law.
 
 
 3
 In response to the discrimination charges, the Defendants retained an independent expert, Geraldine Randall, to investigate the allegations and produce a report detailing her findings ("Report"). During discovery, the Plaintiffs sought production of the Report. This set off an extended series of discovery disputes between the parties, spanning almost six months. In the end, the Defendants lost the fight -- the district court ordered the Report produced. The parties, however, stipulated to a protective order that kept the Report from becoming public.[1] The district court entered the protective order on February 18, 1998.
 
 
 4
 Mercury News coverage of the discrimination suit apparently began in January 1998, with a story detailing the Plaintiffs' allegations and the Defendants' efforts to withhold the Report. On May 14, 1998, the Mercury News filed a motion seeking permissive intervention and an order modifying the protective order so as to unseal the Report. The district court denied the motion on July 27, 1998, holding that neither the First Amendment nor federal common law provides a right of public access to court records in civil cases prior to final judgment. On January 22, 1999, the Mercury News filed the instant petition for mandamus relief, invoking our jurisdiction pursuant to the All Writs Act, 28 U.S.C. S 1651.
 
 II.
 
 5
 Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." Kerr v. United States District Court, 426 U.S. 394, 402 (1976); Calderon v. United States District Court, 134 F.3d 981, 983 (9th Cir.) (quoting Kerr), cert. denied sub nom. Calderon v. Taylor, 119 S. Ct. 274 (1998). This court has recognized five factors, commonly known as the "Bauman factors," that are the analytic starting point in determining whether mandamus should issue: (1) whether the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or issues of law of first impression. See Phoenix Newspapers v. United States District Court, 156 F.3d 940, 951-52 (9th Cir. 1998); Bauman v. United States , 557 F.2d 650, 654-55 (9th Cir. 1977). A petitioner need not satisfy all five factors. "The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators." Bauman, 557 F.2d at 655. Mandamus review is at bottom discretionary -- even where the Bauman factors are satisfied, the court may deny the petition. See Kerr, 426 U.S. at 403; Phoenix Newspapers, 156 F.3d at 952.
 
 
 6
 The Mercury News contends that mandamus relief is appropriate because the district court's denial of the motion to intervene was based on an erroneous legal principle -- that the public has no right of access to court records in civil cases before judgment. We agree, concluding that a right of access to such records can be derived from at least two independent sources: the federal common law and the Federal Rules of Civil Procedure. This legal conclusion notwithstanding, we must evaluate whether, in light of the Bauman factors, mandamus relief is warranted.
 
 A.
 
 7
 With respect to the first Bauman factor -- the availability of alternate avenues of relief -- we note that a direct appeal was available to the Mercury News here. The precedents of this court make it clear that a denial of a motion for permissive intervention in a civil case is directly appealable. See League of United Latin Amer. Citizens v. Wilson, 131 F.3d 1297, 1307-08 (9th Cir. 1997); see generally 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE S 1923 (2d ed. 1986) (recognizing this as the general rule). As a general matter, "[m]andamus is not to be used as a substitute for an appeal." Calderon v. United States District Court, 137 F.3d 1420, 1421 (9th Cir. 1998); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 8 n.6 (1983).
 
 
 8
 Here, however, the second Bauman factor offsets the first to some degree. Because of the perishable nature of news, a direct appeal might not be an entirely adequate remedy here. In cases involving a request by the press for access to judicial records, this court has recognized that the delay entailed by a direct appeal can constitute an irreparable injury. See Valley Broadcasting Co. v. United States District Court, 798 F.2d 1289, 1292 (9th Cir. 1986) ("[Petitioner] cannot attain the requested relief because the tapes it seeks to copy will lose much of their newsworthiness during the pendency of the trial."). At the same time, we are troubled by the fact that the Mercury News waited almost six months to bring this petition for mandamus.[2] Nevertheless, the Mercury News'willingness to seek the writ, even if belatedly, suggests that the case was once again "newsworthy" in January 1999. To the extent this is true, the decay of newsworthiness would constitute an injury better addressed by a writ of mandamus than by a direct appeal.
 
 
 9
 Accordingly, we find that the first Bauman factors tips against mandamus relief, while the second tips in favor.
 
 B.
 
 10
 As a general matter, the third Bauman factor demands that a petitioner seeking mandamus relief show that "the district court's order is clearly erroneous as a matter of law." See Calderon v. United States District Court, 134 F.3d at 983. Where a petition for mandamus raises an important issue of first impression, however, a petitioner need show only "ordinary (as opposed to clear) error." Id. at 984. The instant case raises an important issue of first impression -- whether the public has a pre-judgment right of access to judicial records in civil cases -- and we conclude that the district court erred in resolving it.
 
 
 11
 Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2). See, e.g., EEOC v. National Children's Ctr., 146
 
 
 12
 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases); Hagestad v. Tragesser, 49 F.3d 1430, 1432 (9th Cir. 1995) (permissive intervention granted to nonparty pressing federal common law right of access); Beckman Indus. v. International Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (approving permissive intervention as method for challenging protective order under Rule 26(c)); Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 657 (3d Cir. 1991) (permissive intervention granted to nonparty newspaper pressing both First Amendment and common law right of access). A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court. See League of United Latin Amer. Citizens, 131 F.3d at 1307; Beckman, 966 F.2d at 472. Where, as here, the district court's decision turns on a legal question, however, its underlying legal determination is subject to de novo review. See Beckman, 966 F.2d at 472; accord Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777 (3d Cir. 1994).
 
 
 13
 In this circuit, there are three necessary prerequisites for allowing permissive intervention pursuant to Rule 24(b)(2): "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." League of United Latin Amer. Citizens, 131 F.3d at 1308. Here, the Defendants do not challenge the first or third of these prerequisites. See Beckman, 966 F.2d at 473-74 (holding that independent jurisdictional basis and strong nexus of fact or law are not required where intervenor merely seeks to challenge a protective order). The Defendants do, however, argue that the Mercury News' motion was untimely, and that the district court thus did not abuse its discretion in denying it.
 
 1.
 
 14
 Generally, a district court's determination of timeliness in connection with a motion to intervene pursuant to Rule 24(b)(2) is reviewed for an abuse of discretion. See League of United Latin Amer. Citizens, 131 F.3d at 1302. Here, however, the district court did not expressly base its decision on timeliness grounds and did not make any factual findings regarding timeliness. As a result, we review de novo. See id.
 
 
 15
 In determining whether a motion for intervention is timely, a court must consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." Id. In measuring any delay in seeking intervention, the inquiry looks to when the intervenor first became aware that its interests would no longer be adequately protected by the parties. See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 785 (1st Cir. 1988).
 
 
 16
 Here, until the filing of the stipulated protective order on February 18, 1998, the interests of the Mercury News were being effectively represented by the Plaintiffs, who had per- sistently sought production of the Report. After the protective order was entered, the Mercury News waited 12 weeks before seeking to intervene. The Defendants do not argue that the length of this delay itself renders the intervention untimely. Indeed, delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records. See, e.g., Beckman, 966 F.2d at 471 (affirming intervention 2 years after settlement); Public Citizen, 858 F.2d at 785 (collecting cases). Instead, the Defendants contend that the delay was prejudicial because they would not have agreed to the stipulated protective order had they known that the Report would become public. The Defendants argue that they passed up their opportunity to seek reconsideration of the district court's order to produce the Report in exchange for the confidentiality provisions of the stipulated protective order. In their view, permitting the Mercury News to intervene now would upset their bargained-for expectations.
 
 
 17
 The Defendants' argument is unavailing. First, on this view, any intervention after the entry of the stipulated protective order would be untimely, as it would upset the bargainedfor expectations of the parties. It was, however, only upon entry of the stipulated protective order that the injury to the public's right of access became clear. Second, to the extent the Defendants relied on the stipulated protective order in making the decision to forgo a motion for reconsideration, such reliance was unreasonable. The right of access to court documents belongs to the public, and the Plaintiffs were in no position to bargain that right away. Third, if a moftion to intervene is denied as untimely, it is likely that subsequent motions to intervene will also be held untimely, stymying the public's right of access altogether. Consequently, courts have recognized that,
 
 
 18
 assuming an intervenor does assert a legitimate, pre sumptive right to open the court record of a particu lar dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order.
 
 
 19
 Public Citizen, 858 F.2d at 787 (quoting Mokhiber v. Davis, 537 A.2d 1100, 1106 (D.C. 1988)).
 
 
 20
 We conclude that the motion to intervene was timely.
 
 2.
 
 21
 This brings us to the heart of the petition: does the public have a pre-judgment right of access to judicial records in civil cases? The Mercury News answers this question in the affirmative, relying on three independent bases: the First Amendment, the federal common law, and the Federal Rules of Civil Procedure.[3] For our purposes here, it is enough that we agree
 
 
 22
 with the Mercury News as to the latter two bases. See Hagestad, 49 F.3d at 1434 n.6. We leave for another day the question of whether the First Amendment also bestows on the public a prejudgment right of access to civil court records.
 
 
 23
 In Nixon v. Warner Communications, 435 U.S. 589 (1978), the Supreme Court recognized a federal common law right "to inspect and copy public records and documents." Id. at 597. Federal appellate courts have uniformly concluded that this common law right extends to both criminal and civil cases. See, e.g., Leucadia, Inc. v. Applied Extrusion Tech., Inc., 998 F.2d 157, 161 (3d Cir. 1993); Smith v. United States District Court, 956 F.2d 647, 650 (7th Cir. 1992); EEOC v. Erection Co., 900 F.2d 168, 169 (9th Cir. 1990); FTC v. Standard Fin. Mgt., 830 F.2d 404, 408 n.4 (1st Cir. 1987); In re Continental Ill. Sec. Litig., 732 F.2d 1302, 1308 (7th Cir. 1984); Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983). We have expressly recognized that the federal common law right of access extends to pretrial documents filed in civil cases, see Hagestad, 49 F.3d at 1434, and that the right of access applies prior to judgment in the criminal context, see Valley Broadcasting, 798 F.2d at 1291 n.2. Other circuits have expressly recognized that the common law right reaches documents filed in connection with motions for summary judgment. See Westinghouse, 949 F.2d at 66061; Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982); see also Leucadia, 998 F.2d at 164 (holding that common law right of access applies to all pretrial motions of a nondiscovery nature and the material filed in connection therewith). While we have never squarely held that the federal common law right of public access extends to materials submitted in connection with motions for summary judgment in civil cases prior to judgment, we conclude that the unbroken string of authorities noted above leaves little doubt as to the answer. What doubt remains, we dispel for the Ninth Circuit today.[4]
 
 
 24
 That such a federal common law right exists, however, does not mandate disclosure in all cases. The federal common law right of access is not absolute, and is not entitled to the same level of protection accorded a constitutional right. See Valley Broadcasting, 798 F.2d at 1293. Thus, although the common law right creates a strong presumption in favor of access, the presumption can be overcome by sufficiently important countervailing interests. See Hagestad, 49 F.3d at 1434 (noting factors to weigh). Where the district court conscientiously undertakes this balancing test, basing its decision on compelling reasons and specific factual findings, its determination will be reviewed only for abuse of discretion. Id. Here, however, the district court never undertook this analysis, having barred the doors to the Mercury News by denying it leave to intervene. Insofar as the decision was based on a failure to recognize the existence of a pre-judgment federal common law right of access to civil court documents, it was clearly erroneous.
 
 
 25
 The Mercury News also contends that it is entitled to intervene in order to press the public's right of access to discovery materials pursuant to Federal Rule of Civil Procedure 26(c). It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. See Citizens First Nat'l Bank v. Cincinnati Ins. 178 F.3d 943, at 944-45 (7th Cir. May 28, 1999); Public Citizen, 858 F.2d at 789; In re Agent Orange Product Liability Litig., 821 F.2d 139, 145-46 (2d Cir. 1987). Rule 26(c) authorizes a district court to override this presumption where "good cause" is shown.
 
 
 26
 In the instant case, the district court entered a blanket stipulated protective order pursuant to Rule 26(c). Such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document. See Beckman, 966 F.2d at 476; Public Citizen, 858 F.2d at 790. Here, the Mercury News sought to intervene in order to modify the stipulated blanket protective order so as to unseal the Report. This circuit has held that a nonparty may seek permissive intervention in order to test whether the "good cause" requirements of Rule 26(c) have been met with respect to a particular item of discovery. See Beckman, 966 F.2d at 473, 476; accord Pansy, 23 F.3d at 783-92; Public Citizen, 858 F.2d at 787-90. Because the district court here denied the Mercury News' motion to inter- vene, it never reached the question of good cause under Rule 26(c). In light of Beckman and Public Citizen, this ruling was clearly erroneous.
 
 
 27
 For the reasons discussed above, we conclude that the third Bauman factor tips in favor of granting mandamus relief.
 
 C.
 
 28
 It has been noted that the fourth and fifth Bauman factors are often mutually exclusive. See Calderon v. United States District Court, 134 F.3d at 983 n.4. The Mercury News' petition does not implicate the fourth factor -- there has been no showing of oft-recurring error on the part of the district courts of this circuit. However, as is plain from the discussion above, the fifth Bauman factor is implicated. The petition presents an important question that has not yet been directly addressed by this circuit -- whether the federal common law right of access extends to documents filed in civil cases that have not yet gone to judgment. Thus, we conclude that the fifth Bauman factor weighs in favor of granting the petition for mandamus.
 
 III.
 
 29
 We conclude that mandamus relief is appropriate. We vacate the district court's order denying the Mercury News' motion for permissive intervention pursuant to Rule 24(b)(2), and remand to the district court for further proceedings. We express no opinion on whether the Mercury News should ultimately prevail in its motion to intervene; this is a question properly addressed to the discretion of the district court. See EEOC v. National Children's Ctr., 146 F.3d at 1048 (district court has considerable discretion in ruling on a motion for permissive intervention, even where all the prerequisites are met). We simply hold that the district court erred to the extent it premised its denial of the motion on a belief that the public had no prejudgment right of access to judicial records in civil cases.
 
 
 30
 The petition for writ of mandamus is GRANTED. The district court's order denying the Mercury News' motion to intervene is VACATED and this matter is REMANDED for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 Apparently the Plaintiffs preferred this compromise to the delays, uncertainty, and costs attendant on an appeal or motion for reconsideration.
 
 
 [2]
 This extended delay also precludes this court from construing the petition as a direct appeal. See Calderon, 137 F.3d at 1422 (where petition is filed within the time permitted for appeal, the court may construe it as a direct appeal, but this course is not available where the petition is filed outside the appeal period).
 
 
 [3]
 Citing United States v. Mindel, 80 F.3d 394, 398 (9th Cir. 1996), the Defendants contend that the Mercury News, as a nonparty intervenor, only has standing to press its First Amendment theory. In Mindel, the court wascalled on to decide whether a crime victim had standing to challenge a district court's order rescinding a defendant's obligation to make criminal restitution payments to the victim. Id. at 395. After finding that the victim did not have standing to bring an appeal, the opinion went on to hold that the victim was also barred from obtaining mandamus relief. Id. at 398. In so holding, the court noted that it had granted mandamus standing to news organizations that had been denied access to criminal proceedings, notwithstanding their inability to bring a direct appeal, but declined to extend this rule beyond the First Amendment context. Id.
 The Defendants' reliance on Mindel is misplaced for at least two reasons. First, we have permitted news organizations to seek mandamus relief in order to vindicate the federal common law right of access to court proceedings. See Valley Broadcasting, 798 F.2d at 1297. Second, as discussed above, the Mercury News has standing to bring a direct appeal, thus taking this case completely outside the rationale of Mindel. See League of United Latin Amer. Citizens, 131 F.3d at 1307-08.
 
 
 [4]
 In resisting the unanimous authorities, the Defendants offer only In re Reporters Committee for Freedom of the Press, 773 F.2d 1325 (D.C. Cir. 1985), in support of their position that the common law right does not apply to civil cases prior to judgment. That reliance is misplaced, as that opinion limits its attention to the First Amendment right of access and expresses no opinion regarding the reach of the federal common law right. See id. at 1340.