CONFEDERATED TRIBES OF SILETZ INDIANS OF OREGON, Smokey Point Hardwoods, Inc., Ross–Simmons Hardwood Lumber Company, Inc., and Stedco/Ross–Simmons Joint Venture, Plaintiffs,

v.

WEYERHAEUSER COMPANY, Defendant.

No. CV 00–1693–PA.

United States District Court, D. Oregon.

July 31, 2003.

Leroy Wayne Wilder, Leroy Wilder, P.C., William K. Barquin, Michael E. Haglund, Michael K. Kelley, Timothy J. Jones, Julie A. Weis, Haglund, Kelley, Homgren & Jones LLP, Portland, OR, for Plaintiffs.

Christopher L. Garrett, Jeffrey C. Dobbins, Julia E. Markley, Anne L. Nichol, Anne L. Nichol, Michael H. Simon, Perkins Coie, LLP, Portland, OR, Susan E. Foster, Thomas L. Boeder, Perkins Coie LLP, Seattle, WA, for Defendant.

## OPINION AND ORDER REGARDING SEALED TRIAL EXHIBITS

PANNER, District Judge.

Plaintiffs brought an anti-trust action against Defendant Weyerhaeuser. The jury awarded Plaintiff Ross–Simmons approximately $79 million after trebling. The jury returned a defense verdict on the claims brought by the other Plaintiffs.

Plaintiffs then moved to "unseal all exhibits designated as confidential or highly confidential by Weyerhaeuser during the course of the trial in this case." The *Oregonian* and *Register–Guard* newspapers submitted letter-briefs seeking "access to exhibits that were received into evidence under seal during the trial in this case."

Defendant opposed the motion.[1] I ordered the parties to identify all exhibits admitted into evidence, or otherwise actually used at trial, that they contend should remain sealed, and to explain why. Defendant listed 85 exhibits. Plaintiffs did not request that any exhibits be sealed. The parties then submitted additional briefing

concerning those 85 exhibits, although Defendant's brief was not responsive to the specific issue on which I had requested supplemental briefing.

### Legal Standards

Early in this case, Judge Brown entered a stipulated protective order allowing any party to designate a document as "confidential" or "highly confidential" and thereby keep it under seal. Because the court entered a "stipulated blanket order," it never actually analyzed whether a particular document should have been sealed, nor were the parties ever required to make a showing of "good cause" under Fed. R.Civ.P. 26(c) justifying protection. Accordingly, the mere fact that an exhibit is presently under seal is of little weight. *See San Jose Mercury News, Inc. v. U.S. District Court—Northern District (San Jose)*, 187 F.3d 1096, 1103 (9th Cir.1999) (blanket protective orders are "inherently subject to challenge and modification"); *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992).

Rather, I must decide *de novo* whether each document should be sealed. *Id. See also Citizens First National Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir.1999) (court may not delegate to the parties the authority to determine whether good cause exists to justify the sealing of documents, and their designation of materials as confidential cannot be rubber-stamped by the court).

In deciding whether to seal a particular document, the court must provide a sufficient explanation of its reasoning, and the factors it considered, so the Court of Appeals may review that determination. *EEOC v. Erection Co.*, 900 F.2d 168, 170

---

1. Defendant also (1) sought sanctions against Plaintiffs for allegedly revealing, in the motion to unseal, information subject to a protective order, and (2) sought leave to depose Plaintiffs' counsel and the press agent for their law firm. I denied those motions.

(9th Cir.1990) (remanding to district court because the findings were inadequate).

■ The party that wants a particular exhibit kept under seal has the burden of justifying that action, especially when there has been no prior individualized judicial determination regarding each exhibit. *See Phillips v. Estates of Byrd,* 307 F.3d 1206, 1210–11 (9th Cir.2002) ("party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted"); *Oregonian Publishing Co. v. United States District Court (Oregon),* 920 F.2d 1462, 1467 (9th Cir.1990).

Several legal sources bear upon the decision to seal or unseal a document, including Fed.R.Civ.P. 26, the common law right, and the First Amendment. *San Jose Mercury News,* 187 F.3d at 1101–02; *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1309–10 (11th Cir.2001).

■ Fed.R.Civ.P. 26(c) allows materials to be sealed or redacted for "good cause shown." Trial courts have "broad latitude" in determining whether a protective order is justified in a particular circumstance, and the grounds that will support such an order. *Phillips,* 307 F.3d at 1211.

■ There also is a federal common law right "to inspect and copy public records and document" which "extends to both criminal and civil cases." *San Jose Mercury News,* 187 F.3d at 1102.[2] This right encompasses both trial and pre-trial documents. *Id.*

■ Finally, "[u]nder the first amendment, the press and the public have a presumed right of access to court proceedings and documents ... [which] can be overcome only by an overriding right or interest 'based on findings that closure is essential to preserve higher values' and is narrowly tailored to serve that interest." *Oregonian Publishing Co.,* 920 F.2d at 1465 (though that was a criminal case).

The caselaw, for the most part, recognizes a gradient. It is easiest to justify sealing discovery materials obtained via the authority of the court subject to a protective order, and never used at trial, filed with the court, or attached to any pleading or substantive motion. *See Seattle Times v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Once a document becomes a part of the official record, it is much harder to justify sealing. *See Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1134–36 (9th Cir.2003). This includes exhibits received into evidence, trial transcripts, and materials attached to a dispositive motion. *Id. See also San Jose Mercury News,* 187 F.3d at 1102 (motion for summary judgment); *Phillips,* 307 F.3d at 1212–13; *Chicago Tribune,* 263 F.3d at 1312–13 ("material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right"); *Citizens First National Bank of Princeton,* 178 F.3d 943 (rejecting protective order that allowed exhibits to remain under seal after they were introduced at trial).

**2.** Although some courts say the right of access to court records is stronger in criminal cases, the Ninth Circuit has not given much weight, if any, to that distinction. *See San Jose Mercury News,* 187 F.3d at 1102; *Erection Co.,* 900 F.2d at 169 ("Although it might be argued that civil proceedings present considerations different than those in criminal prosecutions, case authority provides no enlightenment or support for this distinction. Accordingly, we apply the reasoning set forth in *Valley Broadcasting* "); *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir.1995) (we "start with a strong presumption in favor of access," citing *Valley Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289 (9th Cir.1986), which involved access to exhibits in a criminal case).

■ The common law right to documents in this category "creates a strong presumption in favor of access" that "can be overcome [only] by sufficiently important countervailing interests." *San Jose Mercury News*, 187 F.3d at 1102; *Phillips*, 307 F.3d at 1212. "In deciding whether sufficient countervailing interests exist, the court will look to the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.'" *Phillips*, 307 F.3d at 1213 (quoting *Hagestad*, 49 F.3d at 1434); *Erection Co.*, 900 F.2d at 170.

■ A document may be sealed only "on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434, quoting *Valley Broadcasting*, 798 F.2d at 1293.

### *Discussion*

In deciding which items should be sealed or released, I considered many factors, including but not limited to:

1. Whether the document is limited to historical facts, or contains future projections, intellectual analysis, or other work product.

2. The age of the information, and whether it is outdated or concerns companies no longer in business.[3]

3. Whether the information is already known to others in the industry, or could readily be obtained.

4. How valuable the information is to Weyerhaeuser and its competitors, and whether Weyerhaeuser has described with particularity the harm it contends would result from disclosure.[4]

5. How relevant the document is to the anti-trust action (*e.g.*, does it help establish market shares, log prices, improper actions and motives, or relevant markets), or to a defense asserted in this action by Weyerhaeuser (*e.g.*, that the Plaintiffs went out of business because they were less efficient than Weyerhaeuser).

6. Whether the document was received in evidence, shown to a witness, or otherwise actually used at trial, and whether the contents of the document were displayed or discussed in open court.

7. Whether any sensitive information has been, or could be, redacted.

8. When part of a document is unsealed, whether the remainder should also be disclosed to provide context.

9. Whether the document contains sensitive information regarding a non-party.

10. Whether the information in the document is averaged (such as the average log price in a given year) or specific (*e.g.*, the price a particular customer paid or received for an identifiable transaction).

---

3. The court must consider whether the information in question is stale, or is really not a secret, or can be derived from other available sources. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 101 F.R.D. 34, 39–40 (C.D.Cal.1984).

4. Since the issue here is *public* disclosure, I did not consider whether these documents might benefit another litigant advancing a similar anti-trust claim against Weyerhaeuser. There is precedent for sharing sealed discovery materials with a litigant in a similar case, subject to an appropriate protective order. *See Foltz*, 331 F.3d at 1131–32; *Beckman Industries*, 966 F.2d 470; *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y.1981) ("Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure").

11. The "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434.

12. Whether a party is attempting to try this or a related case in the newspapers, or is hoping the threat of disclosing these documents will unfairly force the opposing party to settle.[5]

13. The public interest, to the extent Weyerhaeuser allegedly made false statements to state officials to procure an exemption from log export regulations, and violated the anti-trust laws.

14. That this case has now progressed beyond mere allegations of wrong-doing. The jury found actual misconduct and antitrust violations concerning Weyerhaeuser's conduct toward Plaintiff Ross–Simmons.

The vast majority of the 85 contested exhibits are clearly relevant to the antitrust case. That is why they were received into evidence or otherwise used at trial. To the extent these exhibits furnish a "window" that lets the public peer inside Weyerhaeuser's alder business and observe years of conduct that a jury has pronounced illicit, that result is consistent with the intent of the anti-trust laws notwithstanding that Weyerhaeuser might prefer to keep that window shuttered.

The disputed exhibits are comprised almost entirely of either historical facts or outdated analysis. That is no surprise, since the evidence at trial was generally confined to events occurring no later than December 31, 2001. Information regarding later dates usually was redacted unless it bore upon motive or intent.

Many of these exhibits were displayed and discussed in open court. Others contain information generally known in the industry.

Weyerhaeuser argues that these documents contain information that could be useful to a competitor. This harm is speculative at best. The jury's verdict notwithstanding, the reality is that Weyerhaeuser remains the proverbial 900–pound gorilla of the alder industry, dwarfing all its competitors combined. It is unlikely that the information in these exhibits will alter that fact. Weyerhaeuser also asserts that manufacturers of other hardwoods, elsewhere in the world, might gain a competitive edge by reading these documents. Defendant's submissions on this issue are unpersuasive. In any event, with limited exceptions, any harm to Weyerhaeuser is outweighed by the public interest in full disclosure.

■ Turning to specific exhibits, 429 through 431 are log supply contracts with a non-party. The price paid is not disclosed in the document, the contracts are expired, and these documents were discussed in open court. There is little reason to seal them. Exhibits 432 through 434 are similar, except the document discloses the actual contract price paid to a specific vendor for a particular transaction. Since these contracts were an issue at trial, I will allow them to be disclosed but require that the contract price be redacted to protect the interests of the non-party. Exhibits 435 and 436 are check requests showing the amount of the down payment to be paid to Crown Pacific on those contracts. Again, the price shall be redacted before those exhibits are disclosed.

■ Exhibit 482 contains very detailed information regarding specific expenses at each Weyerhaeuser alder mill, *e.g.*, how

---

5. *See Hagestad*, 49 F.3d at 1433–34 ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.")

much Weyerhaeuser pays for natural gas. Some of that information is outdated, but on balance the potential harm to Weyerhaeuser from disclosure of those details outweighs any public benefit. I will therefore order that it be sealed.

 However, I will not seal the "cover page" to Exhibit 482 that was prepared by Plaintiffs. It is only a summary and lacks many of the details in the underlying document. Weyerhaeuser argues that the information in the cover page to Exhibit 482 is misleading and incomplete. If so, this information will be of little practical benefit to Weyerhaeuser's competitors, who rely upon it at their peril. Finally, I will not seal the graphs and charts created using the information in Exhibit 482, since those do not contain the same level of detail as the underlying exhibit.

 Exhibits 500 through 505 will be disclosed with the names of non-party log sellers redacted. Exhibits 90a, 104, 105, and 106 all relate to the alleged false statements Weyerhaeuser made to state officials to obtain an exemption from log export regulations. Weyerhaeuser may be concerned that this information casts the company in a poor light. As a general rule, however, "[i]t is not the duty of federal courts to accommodate the public relations interests of litigants". *In re Coordinated Pretrial Proceedings*, 101 F.R.D. at 40. The public interest in those documents outweighs any harm that might result to Weyerhaeuser from their disclosure.

 Exhibits 400, 400A, 405, and 405A are highly relevant to the anti-trust case, and their contents were discussed in open court. Those exhibits are now disclosed. Exhibit 411 is the letter from Gene Novak that mentions the $20 million/year estimate for log price overpayments by Weyerhaeuser. Although Exhibit 411 also contains additional internal analysis and recommendations, disclosure

of the entire document is warranted to provide the context for that statement, and let the reader decide whether it is reliable. Moreover, if—as Weyerhaeuser now contends—Novak didn't know what he was talking about, then Weyerhaeuser should not be concerned whether others read his opinions. Exhibit 411 is disclosed. Exhibits 412, 413, 414, and 479 all relate to Exhibit 411, and to the author's credibility. They are disclosed with it.

 Exhibit 478 does contain some impressions recounted by a senior Weyerhaeuser official. However, much of that information is merely historical fact (*e.g.*, log prices are up slightly this month), and it sheds light on Weyerhaeuser's activities and strategies for the alder business during a time period crucial to the anti-trust case. There also are references to efforts to lobbying state officials, which was an issue in the case. In reviewing this exhibit I did not see anything that would unfairly prejudice Weyerhaeuser if disclosed. The exhibit was received in evidence, used at trial, and went into the jury room. On balance, Defendant has not made a sufficient showing to justify sealing this exhibit, so it is disclosed.

 Exhibits 485 through 488 show the average price Weyerhaeuser charged each of its mills for internal transfers of alder logs, broken down by size and quality. The figures are for one month per year. Plaintiffs contend these exhibits show Weyerhaeuser secretly subsidized its Longview mill to compensate for Longview over-paying for logs purchased on the open market as part of a scheme to drive Ross–Simmons out of business. The public interest tips the balance in favor of disclosing those exhibits.

 Exhibit 1395 lists total annual alder sales to foreign nations, but does not disclose the names of any customers, or

the details of particular transactions. At most, it might tell a competitor how many thousand board feet of alder lumber Weyerhaeuser sold in Ireland in 1990. It is disclosed. The figures in many of the other exhibits at issue are likewise averaged (e.g., average log price in 1997 as a whole), with little detail about specific transactions.

The remaining exhibits do not warrant discussion. I am satisfied that each should be disclosed (as already redacted, if applicable), based upon the considerations discussed above.

### Conclusion

Plaintiffs' Motion (# 239) to Unseal the Trial Record is granted in part and denied in part. Exhibits 81a, 82, 86, 87, 88, 89, 90a, 94, 95, 98, 99, 104, 105, 106, 110, 113, 114, 115, 116, 117, 118, 119, 120, 122, 123, 400, 400A, 401, 402, 403, 404, 405, 405A, 406, 407, 408, 409, 410, 411, 412, 413, 414, 424, 425, 426, 429, 430, 431, 478, 479, 480, 483, 485, 486, 487, 488, 493, 495, 1275, 1309, 1321, 1322, 1326, 1327, 1366, 1367, 1385, 1389, 1390, 1395, 1415, 1416, 1417, 1418, 1419, and 1500 are unsealed.

Exhibits 432, 433, 434, 435, and 436 are unsealed, except the contract price and amount of the down payment shall be redacted. The cover page of Exhibit 482 is unsealed, but the balance of that exhibit shall remain sealed. Exhibits 500, 501, 502, 503, 504, and 505 are unsealed, except the names of any non-party log sellers shall be redacted. The particular pages of Exhibit 418 used at trial are unsealed; the remainder of that exhibit shall remain under seal.