**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRED JAY JACKSON,
          *Petitioner-Appellant,*

v.

ERNEST C. ROE, Warden,
          *Respondent-Appellee.*

No. 02-56210

D.C. No.
CV-00-11975-DT

OPINION

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Argued and Submitted
July 11, 2005—Pasadena, California

Filed September 23, 2005

Before: Stephen Reinhardt, Alex Kozinski, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

13649

## COUNSEL

Gretchen Fusilier, Carlsbad, California, for the petitioner-appellant.

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Brad D. Levenson, Deputy Attorney General, and Alene M. Games, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

**OPINION**

BERZON, Circuit Judge:

Fred Jackson filed a "mixed" 28 U.S.C. § 2254 habeas corpus petition. The district court refused to stay proceedings so that he could exhaust the unexhausted claim, which was at that time pending before the California Supreme Court. *Rhines v. Weber*, 125 S. Ct. 1528 (2005), however, holds that a federal court must, in limited circumstances, stay a mixed petition to allow a petitioner to present an unexhausted claim to a state court for review. *Id.* at 1535. Under *Rhines*, a district court's decision to grant or deny a stay is reviewed for abuse of discretion. *Id.* Because the district court in this case failed to apply the standards regarding staying a mixed habeas petition enunciated in *Rhines* — quite understandably, as Jackson's petition was dismissed almost three years prior to the decision in *Rhines* — we vacate and remand to allow the district court the opportunity to do so.

## I.

Appellant was convicted in 1997 in California state court of two counts of attempted first degree murder and two counts of second degree robbery, and sentenced to a term of 126 years to life in prison. He unsuccessfully appealed his conviction to the California Court of Appeal but did not file a petition for review in the California Supreme Court. Jackson then sought collateral review of his conviction by writs of habeas corpus, filed in the Los Angeles County Superior Court on July 2, 1999, in the California Court of Appeal on February 3, 2000, and in the California Supreme Court on June 22, 2000. *See Carey v. Saffold*, 536 U.S. 214, 221 (2002) (describing California's unique "original writ" system for habeas corpus review in which petitioners may file new original petitions in appellate courts rather than appeal lower court determinations). In each petition, the same three issues were raised: whether (1) the trial court erred in denying the motion

for a mistrial after Jackson stabbed his counsel in front of the jury; (2) the trial judge abused his discretion in failing to investigate Jackson's allegations that his counsel molested him and sought sexual favors in exchange for adequate representation and in failing to disqualify himself; or (3) the trial court violated Jackson's due process rights by failing to suspend proceedings pending a hearing on his sanity. Each petition was denied, with the Supreme Court of California denying relief on September 27, 2000.

Jackson then filed a federal habeas corpus petition in the District Court for the Central District of California on December 18, 2000, raising the same three issues he had presented in his state habeas proceedings. In response to the state's motion to dismiss, Jackson filed a traverse, alleging for the first time that his appellate counsel had rendered ineffective assistance by failing on direct appeal to raise viable issues. No such ineffective assistance claim had been exhausted in state court. In the same filing, Jackson also alleged that his trial counsel was ineffective, a claim that also appears to be unexhausted.

The magistrate judge issued his Report and Recommendation on March 7, 2002, recommending that the petition be dismissed for failure to exhaust. The magistrate judge considered Jackson's petition mixed, because it included the unexhausted claim that he had received ineffective assistance of appellate counsel.[1]

In addition to determining that Jackson's petition was mixed and therefore must be dismissed, the magistrate judge

_____

[1]The magistrate judge considered it of no import that the unexhausted ineffective assistance of appellate counsel claim was raised only in the traverse, deeming the claim to be part of the petition because Jackson wanted it reviewed as a "separate constitutional claim." The Report and Recommendation did not discuss Jackson's allegation that his trial counsel had been ineffective.

also concluded that Jackson's exhausted claims were procedurally defaulted.[2] In light of this dual holding, the magistrate judge offered Jackson two options: (1) withdraw the unexhausted ineffective assistance claim, leaving a fully exhausted, but procedurally barred, petition or (2) leave the unexhausted issue in the petition, in which case the petition would be denied without prejudice as mixed. In his Report and Recommendation, the magistrate judge also considered, *sua sponte*, the propriety of a stay to allow Jackson time to exhaust the ineffective assistance claim but declined to issue one, stating that there were "no extraordinary circumstances that would warrant a stay," as there was "no reason why Jackson could not have raised this constitutional claim in the state courts prior to presenting it to this Court."

On March 26, 2002, Jackson filed a motion requesting that his petition be held in abeyance until his ineffective assistance

---

[2]The California Supreme Court denied Jackson's habeas petition with a single citation to *In re Dixon*, 41 Cal. 2d 756, 759 (1953). *Dixon* sets forth a procedural bar whereby a petitioner is precluded from raising on habeas issues that could have been, but were not, raised on direct appeal. *Id*. Under the doctrine of procedural default, a petitioner who has defaulted on his claims in state court is barred from raising them in federal court so long as the default is "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (unless cause and prejudice are demonstrated or a fundamental miscarriage of justice would result).

In his Report and Recommendation, the magistrate judge held that the California Supreme Court's citation to *Dixon* was an independent and adequate state ground that precluded federal review. In this appeal, Jackson challenges this procedural default determination. Because the district judge ultimately dismissed Jackson's petition for failure to exhaust, not for procedural default, *see infra*, we do not address the merits of Jackson's challenge. We do note, however, that after the magistrate judge's determination as to the adequacy of the *Dixon* bar, we decided *Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003), which established a burden-shifting test to govern challenges to the adequacy of a state procedural bar. *Id*. at 584-85. Should the district court have occasion to examine this issue again on remand, the procedure announced in *Bennett* should be applied.

of counsel claim, then pending before the California Supreme Court, was fully exhausted.[3] The magistrate judge denied Jackson's request on May 9, 2002. After Jackson did not exercise the option to withdraw his unexhausted claim, the district judge adopted the Report of the magistrate judge and dismissed Jackson's petition without prejudice on May 10, 2002.

Jackson filed a Notice of Appeal and an application for a certificate of appealability on June 17, 2002. Although the district court denied the application, Jackson obtained a certificate of appealability from this Court on December 17, 2002.

## II.

[1] Labeled "one of the pillars of federal habeas corpus jurisprudence," the doctrine of exhaustion requires a petitioner to present his claims to a state court for review before seeking relief in federal court. *Calderon v. United States District Court* (*Taylor*), 134 F.3d 981, 984 (9th Cir. 1998). For reasons of comity and federalism, the Supreme Court required exhaustion of state remedies long before Congress included the requirement in the statute governing federal habeas corpus review of state court convictions. *See Ex parte Royall*, 117 U.S. 241, 251 (1886); Act of June 25, 1948, ch. 646, 62 Stat. 869, 967 (codified as amended at 28 U.S.C. § 2254(b)).

[2] The current statutory exhaustion requirement prevents a federal court from granting habeas relief "unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that

---

[3]Although Jackson's motion does not clarify which of the two ineffective assistance claims is the unexhausted issue he submitted to the California Supreme Court, his Objections to the Report and Recommendation of the magistrate judge, filed on the same date as his motion, indicate that he was awaiting a response on the ineffective assistance of appellate counsel claim.

render such process ineffective to protect the rights of the applicant."[4] 28 U.S.C. § 2254(b)(1). Over twenty years ago the Supreme Court decided the proper course of action to be taken when a district court is faced with a "mixed petition," that is, a petition that presents some claims that have been exhausted and some that have yet to be fully and finally adjudicated by a state court. The Supreme Court adopted a rule of "total exhaustion," requiring that *all* claims in a habeas petition be exhausted before a federal court can act on the petition.[5] *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Under the rule announced in *Rose*, a district court had to "dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court."[6] *Id.* at 510.

Although the language of *Rose* seemed to allow only the above three options, this court, in a footnote in *Neuschafer v. Whitley*, 860 F.2d 1470 (9th Cir. 1988), suggested an alternative procedure, that of stay-and-abeyance: "When a petitioner has not exhausted his state remedies before filing a federal habeas petition, a district court may hold the federal petition in abeyance, issue a stay of execution, and allow the petitioner

---

[4]Jackson does not claim that California lacks adequate avenues of relief or that circumstances render state relief ineffective.

[5]The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1218, amended 28 U.S.C. § 2254 to include a provision that allows a district court to *dismiss* a habeas petition on the merits, notwithstanding a petitioner's failure to exhaust. 28 U.S.C. § 2254(b)(2). After AEDPA then, a district court can dismiss a mixed petition on the merits but may not grant relief unless and until all the claims therein have been exhausted in state court.

[6]The fact that the Supreme Court in *Rose* permitted a petitioner to cure the defect by amending the petition to remove the unexhausted claims and proceeding with an exhausted petition led Justice Blackmun to comment that he failed "to understand what all the fuss is about," in light of the fact that the Court of Appeals in *Rose* directed the district court simply to dismiss the unexhausted claims before acting on the petition. *Rose*, 455 U.S. at 530 (Blackmun, J., concurring in the judgment).

an opportunity to exhaust his state remedies." *Id.* at 1472 n.1. Subsequent Ninth Circuit cases, however, rejected the stay-and-abeyance procedure offered in *Neuschafer*, holding it inconsistent with *Rose. Taylor*, 134 F.3d at 985; *see also Calderon v. United States District Court* (*Gordon*), 107 F.3d 756, 760 (9th Cir. 1997) (holding that the district court erred when it relied on *Neuschafer* for the proposition that "dismissal of mixed habeas petitions 'is not the rule in the Ninth Circuit' "); *Greenawalt v. Stewart*, 105 F.3d 1268, 1274 (9th Cir. 1997) (finding the *Neuschafer* procedure to be dictum and inconsistent with *Rose*).

In light of the Ninth Circuit's rulings that district courts lacked the power to stay *mixed* petitions, district courts within the Circuit developed a three-step procedure applicable to petitions that contained both exhausted and unexhausted claims. *See Taylor*, 134 F.3d at 986. The procedure included (1) allowing a petitioner to amend his petition to remove the unexhausted claims — as *Rose* indicated; (2) staying and holding in abeyance the amended, fully exhausted petition to allow a petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) permitting the petitioner after completing exhaustion to amend his petition once more to reinsert the newly exhausted claims back into the original petition. *Id.* While the court in *Taylor* expressed reservations about the three-step procedure, it concluded the district court did have discretion to stay an exhausted petition.[7] *Id.* at 988; *see also Fetterly v. Paskett*, 997 F.2d 1295, 1301 (9th Cir. 1993) (holding that it was an abuse of discretion for a district court not to stay an exhausted petition pending exhaustion of a newly discovered claim).

This court later approved the three-step procedure, includ-

---

[7]*Taylor* declined to address the propriety on the third step, that of re-amending the petition to include a newly exhausted claim, holding that such a decision would be premature because, in that case, the district court had not yet permitted such an amendment. *Taylor*, 134 F.3d at 988-89.

ing the amendment of the original petition to include a newly exhausted claim, as within a trial court's discretion. *See James v. Pliler*, 269 F.3d 1124, 1127 (9th Cir. 2001). Later, in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), we required a district court at least to consider the option of holding the exhausted petition in abeyance, so that a petitioner would be able to seek exhaustion in state court before attempting to amend his federal petition to include the newly exhausted claims.

The court in *Kelly* also provided guidance to district courts considering such an option, stating that a stay is "particularly appropriate when an outright dismissal will render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA]." *Id.* at 1070. While recognizing that the decision remained within the district court's discretion, *Kelly* signaled that the Ninth Circuit joined "the 'growing consensus' in recognizing the clear appropriateness of a stay when valid claims would otherwise be forfeited." *Id.*; *see also Olvera v. Giurbino*, 371 F.3d 569, 574 (9th Cir. 2004) (finding an abuse of discretion because the district court failed to grant a stay when the petitioner could not have exhausted his claims and returned to federal court within AEDPA's deadline).

Despite the availability of the three-step procedure, it appears that neither the petitioner nor the district court addressed this option when considering the possibility of a stay. The record does not reflect, in either the Report and Recommendation of the magistrate judge or Jackson's subsequent Motion to Request Petitioner's Writ of Habeas Corpus Be Held in Abeyance, that striking the unexhausted claim before issuing the stay was ever contemplated. Rather, it appears that both the petitioner and the magistrate judge were proceeding upon the assumption that the "mixed petition" could be stayed, without resorting to the three-step procedure. Accordingly, we have no occasion in this case to consider the contin-

ued propriety of the three-step stay-and-abeyance procedure outlined in *Taylor* and *Kelly*.

## III.

**[3]** More than two decades after mandating total exhaustion in *Rose*, the Court in *Rhines v. Weber*, 125 S. Ct. 1528 (2005), weighed in on the question of whether a district court may *stay*, rather than *dismiss*, a mixed habeas petition. Specifically, the Court considered "whether a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Id.* at 1531. The Court held that a district court does in fact have such discretion, under the "limited circumstances" in which there was "good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 1535.

In *Rhines*, the Supreme Court noted that because of *Rose*'s total exhaustion requirement and AEDPA's one year statute of limitations, petitioners with mixed petitions "run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id.* at 1533. This risk arises because a petitioner could be faced with the choice of either striking his unexhausted claims and going forward with an exhausted petition or allowing the whole petition to be dismissed, without prejudice, as mixed. Under the first option, once the other claims had been exhausted, a petitioner could return to federal court. If his original petition had already been decided on the merits, he could include the newly exhausted claims in a subsequent petition. The second petition, however, would be subject to the strict limitations AEDPA places on successive petitions.[8] *See* 28 U.S.C. § 2244(b). The second option avail-

---

[8]If the petitioner was able to return to federal court *before* the court had decided his exhausted claims on the merits and successfully amend the undecided petition to include the newly exhausted claims, the recent

able under *Rose* is no more desirable for a petitioner, given the fact that AEDPA's one year statute of limitations will likely have run before a petitioner is able fully to exhaust state court remedies on the mixed petition and return to federal court. *Rhines*, 125 S. Ct. at 1533-34 (noting that a petitioner who files on time in federal court will have no way of controlling when the district court will act on his petition); *see* 28 U.S.C. § 2244(d).

**[4]** In light of the above circumstances, *Rhines* concluded that a district court has discretion to stay a mixed petition to allow a petitioner time to return to state court to present unexhausted claims.[9] In making this determination, however, the Court held that the stay-and-abeyance procedure must be applied consistently with AEDPA's twin purposes: "reduc-[ing] delays in the execution of state and federal criminal sentences" and encouraging state "petitioners to seek relief from

---

Supreme Court decision in *Mayle v. Felix*, 125 S. Ct. 2562 (2005), might significantly limit his ability to have his amended claims "relate back" to the filing of the original petition and be considered timely under AEDPA. In *Mayle*, the Court held that our former understanding of the relation-back standard under Federal Rule of Civil Procedure 15(c), which allowed an amendment to a habeas petition to "relate back" to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad. *Id.* at 2570. Instead, held the Court, an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with the original claim. *Id.* at 2574.

[9]This court's recent decision in *Jefferson v. Budge*, 419 F.3d 1013 (9th Cir. 2005), addressed the question of whether a district court must offer a petitioner the choices announced in *Rose* before dismissing a mixed habeas petition. *Id.* at 1014. Answering the question presented in the affirmative, *Jefferson* contained the following statement: "*Rose* mandates that a district court must dismiss mixed petitions and leave petitioners with a choice of paths to pursue. [*Pliler v.*] *Ford* reiterates this dictate by quoting directly from *Rose*, and *Rhines* follows suit." *Id.* at 1016 (internal citations omitted). We understand this reference to mean that when a district court opts *not* to stay a mixed petition pursuant to *Rhines*, the requirements set forth in *Rose* continue to govern.

state courts in the first instance." *Rhines*, 125 S. Ct. at 1534 (internal quotation marks omitted). As a result, *Rhines* cautioned, a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. *Id.* at 1535. Stays are also improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id.* When these factors are absent, however, and the petitioner has good cause for the failure to exhaust, *Rhines* states "it likely would be an abuse of discretion for a district court to deny a stay." *Id.*

**[5]** Hindsight is of course twenty-twenty, and *Rhines* has now established that the *Neuschafer* footnote was correct in stating that district courts may sometimes properly stay mixed habeas petitions. To the extent our earlier cases state otherwise, they are no longer good law.

What *Rhines* did *not* do, however, is comment on the validity of the three-step stay-and-abeyance procedure approved in *Taylor* and *Kelly*. The two approaches are distinct: *Rhines* applies to stays of *mixed* petitions, whereas the three-step procedure applies to stays of *fully exhausted* petitions and requires additional steps — the amendment of the original mixed petition and a second amendment to add the newly exhausted claims. Because the district court in this case considered the option of staying Jackson's *mixed* petition, without regard to the possibility of excising the unexhausted issue and later, after exhaustion, amending the petition to reattach the claim, *Rhines* directly controls. Accordingly, we leave for another day the question of whether the stay standard announced by the Supreme Court in *Rhines* applies to our three-step stay-and-abeyance procedure.[10]

---

[10]We note in passing that because *Rhines* has now authorized stays of mixed petitions, albeit in limited circumstances, the three-step procedure may fall into disuse. Not only does the three-step process seem unneces-

**IV.**

Having canvassed the current landscape of the law concerning the treatment of mixed petitions, we now turn to the proper resolution of this case.

In his Report and Recommendation, adopted by the district court, the magistrate judge *sua sponte* considered, and rejected, the possibility of staying Jackson's mixed habeas petition. In doing so, the magistrate judge noted that there were "no *extraordinary circumstances* that would warrant a stay" (emphasis added); given that Jackson was aware of the "allegedly ineffective representation at the time counsel filed his appellate brief" in state court, there was "no reason why Jackson could not have raised this constitutional claim in the state courts prior to presenting it to this Court."[11]

**[6]** Although examination into Jackson's failure to exhaust was proper, and indeed, necessary, under *Rhines*, we hold that the application of an "extraordinary circumstances" standard does not comport with the "good cause" standard prescribed by *Rhines*. *See NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir. 1979) (distinguishing between the "good cause" standard found in NLRB regulations and the "extraordinary circumstances" standard in section 10(e) of the National Labor Relations Act and noting that " 'good cause' . . .

---

sarily cumbersome after *Rhines*, but also the Supreme Court's recent decision in *Mayle*, imposing stricter limitations than previously required by this court for amendments to relate back to the original filing date, is likely to make our former approach less useful for petitioners in many instances.

[11]In response to Jackson's subsequent request to hold the proceedings in abeyance, the magistrate judge issued an order, *not* adopted by the district court, denying the motion. That order repeated that "[n]o valid reason has been submitted why Petitioner could not have brought the alleged ineffectiveness of counsel to the attention of the state courts at an earlier time."

appears to be less stringent than . . . 'extraordinary circumstances' ").**¹²**

## V.

**[7]** *Rhines* now makes clear that the district court was incorrect both in asserting that Jackson's mixed petition *had* to be dismissed and in concluding that a stay was not warranted due to the absence of "extraordinary circumstances." Of course, these errors are understandable given the fact that the proceedings in this case predated the opinion in *Rhines* by almost three years. Accordingly, we must remand this case to the district court to apply *Rhines* in the first instance. *See Akins v. Kenney*, 410 F.3d 451, 456 (8th Cir. 2005) (remanding case to district court to allow petitioner "an opportunity to demonstrate good cause for his failure to exhaust his claims first in state court, to show that his unexhausted claims are not 'plainly meritless,' and to demonstrate that he has not engaged in abusive litigation tactics or intentional delay").

We note that, as petitioner's counsel recognized at oral argument, the record does not reflect the current status of Jackson's ineffective assistance claim, which was pending

---

**¹²**This conclusion is not altered by the fact that in his Report, the magistrate judge stated that he "presently sees no reason" for Jackson's failure to exhaust. This tentative language seemed to invite Jackson to submit his reasons to the court. Although Jackson did offer a reason in his Objections, namely that he was not aware of his counsel's ineffective performance until 2000, the district court never addressed whether this explanation would excuse Jackson's failure to present his claim to the California state courts. Rather, the district court "adopted" the findings and conclusions of the magistrate judge, thereby adopting the determination that "no reason" was presented. Furthermore, even if the district court had addressed Jackson's proffered reason, he would have done so under the wrong standard. By adopting the "extraordinary circumstances" test contained in the Report, any evaluation of Jackson's excuse would have been improper under *Rhines*. Accordingly, we need not address whether Jackson's proffered reason would amount to "good cause" sufficient to warrant a stay. We leave this question for the district court to consider on remand.

before the California Supreme Court at the time of his request for a stay. If this claim has since been exhausted, there may no longer be a need to stay the proceedings. Instead, the district court could consider the ineffective assistance claim, contained in the traverse, on the merits. In addition, the district court may also need to resolve the question of whether Jackson's ineffective assistance claim is untimely under AEDPA or whether it "relates back" to the date of the original petition under the standards set forth by the Supreme Court in *Mayle*. We leave it to the district court to consider these issues on remand.

**VACATED AND REMANDED.**