**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JONATHAN KING,
    *Petitioner-Appellant,*

v.

STUART J. RYAN,
    *Respondent-Appellee.*

No. 06-55858

D.C. No.
CV-05-03654-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
March 9, 2009—Pasadena, California

Filed May 5, 2009

Before: Michael Daly Hawkins, Marsha S. Berzon and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Berzon

5241

## COUNSEL

Fay Arfa (argued) of Fay Arfa, A Law Corporation, Los Angeles, California, for petitioner-appellant King.

David Fredric Glassman (argued) and G. Tracey Letteau of the Office of the California Attorney General, Los Angeles, California, for respondent-appellee Ryan.

## OPINION

BERZON, Circuit Judge:

Jonathan King appeals from the district court's order dismissing his petition for a writ of habeas corpus. King filed a "mixed" habeas petition in federal court — that is, one including both exhausted and unexhausted claims — just two days before the end of the one-year statute of limitations applicable under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2244(d)(1). King then asked the district court to stay the petition and dismiss his unexhausted claims so that he could exhaust them in state court before adding them back into the stayed federal petition, thereby invoking the three-step procedure outlined by this Court in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002) (hereinafter "the *Kelly* procedure").

The district court denied King's request. Instead, it ordered King to either abandon his unexhausted claims and proceed with his exhausted claim or dismiss the entire action without prejudice. King did neither. The district court then dismissed King's unexhausted claims and allowed the case to proceed only with respect to King's one remaining fully-exhausted claim.[1] We hold that, in doing so, the district court applied an erroneous legal standard. Contrary to the district court's order, the *Kelly* procedure remains available after the Supreme Court's decision in *Rhines v. Weber*, 544 U.S. 269 (2005), and unlike the procedure permitted by *Rhines*, does not require that a petitioner show good cause for his failure to

---

[1]King does not appeal the court's subsequent dismissal of this claim on the merits.

exhaust state court remedies. We nonetheless affirm the dismissal because the error was harmless: as explained below, King fares no better under the *Kelly* standard we apply today than he did under the district court's analysis.

## I.

King is currently serving a 32-year sentence for two counts of attempted second-degree robbery, two counts of second-degree robbery, two counts of assault with a firearm, and one count of willfully evading a pursuing police officer. King unsuccessfully appealed his conviction to the California Court of Appeal and then to the California Supreme Court, which affirmed in an order that became final on May 18, 2004. On May 16, 2005, King filed a habeas petition in U.S. District Court, just two days before the end of AEDPA's one-year limitations period. *See* 28 U.S.C. § 2244(d)(1).

King's habeas petition acknowledged that nine of his ten claims were unexhausted at the time of filing. On May 18, 2005, King filed a motion appearing to invoke the three-step procedure outlined in *Kelly*, which affirmed the three-step stay and abeyance procedure first articulated in *Calderon v. U.S. Dist. Ct.* (*Taylor*), 134 F.3d 981, 986 (9th Cir. 1998). Pursuant to the *Kelly* procedure, (1) a petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition. *Kelly*, 315 F.3d at 1070-71; *see also* Part III *infra*. Following *Kelly*'s outline, but without citing that case by name, King requested that the district court "dismiss [his] unexhausted claims," and proposed that "after exhausting the new claims in state court," he would return to federal court and "file a First Amended Petition reasserting the previously unexhausted claims."

Later in the same motion, however, King expressly refer- enced the U.S. Supreme Court's decision in *Rhines*. *Rhines* declared that "in limited circumstances," federal district courts have the authority to stay a mixed habeas petition and hold the entire petition — exhausted and unexhausted claims alike — in abeyance while the petitioner returns to state court to exhaust his remedies there. 544 U.S. at 277; *see also* Part III *infra*. The procedure set out in *Rhines* is less cumbersome for a petitioner than the *Kelly* procedure, but importantly, it is available only upon a showing that the petitioner had good cause for not exhausting his state claims earlier. 544 *U.S.* at 277. Citing *Rhines*, King's motion asserted that he had dem- onstrated good cause for his failure fully to exhaust his peti- tion, and asked that the district court exercise its discretion to "stay the petition pending exhaustion."

In other words, King proposed two different approaches to his mixed petition: one (*Kelly*) which would not require good cause but also would not leave the entire mixed petition pend- ing in district court, and a second (*Rhines*) which would require a good cause showing and would leave the entire mixed petition pending in district court.

On May 24, 2005, before the district court ruled on his motion, King filed a state habeas petition in Los Angeles County Superior Court, raising all nine of his unexhausted claims. After the Superior Court denied the petitions and King's state court appeal failed, King petitioned for review to the California Supreme Court. While the state habeas pro- ceedings were pending, the magistrate judge assigned to King's federal habeas case issued a Report and Recommenda- tion (R&R) in which he recommended denying King's request for a stay and also recommended that King be ordered to either delete all nine of his unexhausted claims and proceed with his one exhausted claim or dismiss the entire petition and file a new petition after exhausting his state court remedies. The magistrate judge discussed the requirements outlined in *Rhines* and determined that King had not demonstrated "good

cause" for failure to exhaust nine of his ten claims. The R&R contained no discussion of the alternative *Kelly* procedure.

King filed an objection to the magistrate judge's R&R, arguing that he did have good cause for his failure to exhaust his state remedies. On October 7, 2005, the district court adopted the magistrate judge's R&R. Unlike the magistrate judge, the district court recognized that King's motion most clearly tracked the three-step stay-and-abeyance procedure outlined in *Kelly*, and it proceeded to analyze the motion under that rubric. The district court held, however, that *Rhines*'s good cause standard applies to the *Kelly* procedure as well, reasoning that both *Kelly* and *Rhines* are directed at solving the same problem — namely, the interplay between AEDPA's one-year statute of limitations and the total exhaustion requirement first articulated in *Rose v. Lundy*, 455 U.S. 509 (1982). *See* Part II *infra*. The district court then rejected King's good cause argument.

In addition, the court stated, "even assuming the [*Rhines*] good cause standard does not apply to the Ninth Circuit's three step procedure [outlined in *Kelly*], it is not at all clear that the [*Kelly*] procedure benefits petitioner." The court provided two related reasons why that might be so: First, at the time King requested a stay, the one-year limitations period had already run, so King could not possibly exhaust his claims in state court and return to federal court in time to file his claims. Second, "the recent Supreme Court decision in *Mayle v. Felix*, [545 U.S. 644 (2005)], might significantly limit [King's] ability to have his amended claims 'relate back' to the filing of the original petition," making it problematic for King to add them to his petition after the one-year period expired. (Internal citations and quotation marks omitted.)[2] The court concluded that either way, "it appears the better

---

[2]*Mayle v. Felix*, 545 U.S. 644 (2005), establishes the circumstances in which amended claims in a habeas petition "relate back" to the filing date of the original petition. *See* Part IV *infra*.

approach for petitioner would have been to seek a stay of the *mixed* Petition (i.e., the *Rhines* approach) instead of seeking to follow the [*Kelly*] three-step approach."

Denying King's motion to stay the petition and dismiss the unexhausted claims, the district court ordered King to file within five days either a notice of abandonment of the unexhausted claims or a request to dismiss the entire action without prejudice. The district court's order went on to state that "[i]f no written response is received within five days of the filing date of this Order, . . . the Court will dismiss the unexhausted claims and order further proceedings with respect to the one exhausted claim in the Petition." King did not respond to the district court's order, and on November 2, 2005, the district court dismissed the unexhausted claims and referred the matter back to the magistrate judge for adjudication of the one remaining, exhausted claim.

That same day, approximately forty minutes before the district court's order was filed, the California Supreme Court denied King's petition for review on the merits, at which point the nine previously-unexhausted claims were fully exhausted. King promptly filed a motion for reconsideration with the district court, drawing the district court's attention to the California Supreme Court's ruling. The district court denied King's motion for reconsideration, explaining that its decision to deny King's motion to stay his petition was final as of October 7, 2005, and that the California Supreme Court's ruling therefore came too late to salvage the nine originally unexhausted claims.

King next requested leave to file an amended habeas petition with the district court which included his nine newly-exhausted claims, citing neither *Kelly* nor *Rhines*, but only Federal Rule of Civil Procedure 15(a). On January 6, 2006, the district court once again refused King's request, this time stating that the proposed amendment was improper because those nine claims had been dismissed with prejudice

(although the district court had not so stated in its previous order) and also because they were now time-barred under AEDPA. Consequently, the district court proceeded to consider King's one originally-exhausted claim, which it ultimately dismissed on the merits.

King now appeals both the district court's refusal to implement the three-step procedure in *Kelly* and its denial of his motion to file a first amended complaint. This court granted a certificate of appealability on four issues: (1) whether the *Kelly* three-step procedure for staying a fully exhausted habeas petition remains available after *Rhines*; (2) if so, whether a petitioner seeking to stay a fully exhausted petition pursuant to the *Kelly* three-step procedure must demonstrate good cause for the failure to exhaust claims in state court, as is required for the stay of a mixed petition under *Rhines*; (3) whether King demonstrated good cause for his failure to exhaust nine of his ten claims in state court; and (4) whether, after dismissing the nine unexhausted claims, the district court erred in denying King leave to file a first amended petition under FRCP 15(a), where the newly-exhausted claims sought to be added were the same as those raised in the original petition.[3]

We would not need to address the first and second certified issues if we determined that King had demonstrated good cause under *Rhines* for his failure to exhaust his state court

---

[3]Notably absent from the certificate of appealability is the question whether the district court abused its discretion in denying King's November 8 motion for reconsideration premised on the fact that all nine of King's previously unexhausted claims had been fully exhausted by the time the district court issued its November 2 order. Because this issue was not covered in the certificate of appealability or raised in King's opening brief to this court, we do not address it. *See* 9th Cir. R. 22.1(e) ("Petitioners shall brief only issues certified by the district court or the court of appeals. Alternatively, if a petitioner concludes during the course of preparing the opening brief, that an uncertified issue should be discussed in the brief, the petitioner shall first brief all certified issues under the heading, 'Certified Issues,' and then, in the same brief, shall discuss any uncertified issues under the heading, 'Uncertified Issues.' ").

remedies before filing his petition in federal court. In its October 7 order, adopting the magistrate judge's R&R, the district court rejected King's good cause argument both because it was based on factual allegations not presented to the magistrate judge, and because those factual allegations were hearsay and insufficiently detailed to establish good cause. Given our deferential standard of review of both the district court's good cause finding and its refusal to consider new evidence submitted in opposition to the magistrate's findings, *see Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002), we conclude that the district court did not abuse its discretion in finding no good cause and refusing to allow King a stay under *Rhines*.

We discuss the remaining issues in turn below.

## II.

**[1]** Habeas petitioners have long been required to adjudicate their claims in state court — that is, "exhaust" them — before seeking relief in federal court. *See, e.g.*, *United States ex rel. Kennedy v. Tyler*, 269 U.S. 13, 17-19 (1925); *Ex parte Royall*, 117 U.S. 241 (1886); Act of June 25, 1948, ch. 646, 62 Stat. 869, 967 (codified as amended at 28 U.S.C. § 2254(b)). This requirement is "grounded in principles of comity[,] as it gives states the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (internal quotation marks omitted). The current statutory exhaustion requirement prevents a federal court from granting habeas relief "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

In 1982, the U.S. Supreme Court interpreted the exhaustion rule in the habeas context as requiring "total exhaustion" of "mixed" petitions — that is, those petitions that contain both exhausted and unexhausted claims. *Rose*, 455 U.S. at 522. *Rose* required district courts to dismiss a mixed petition,

"leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.* at 510.

**[2]** The 1996 passage of AEDPA, which imposes a one-year statute of limitations on the filing of habeas petitions in federal court, *see* 28 U.S.C. § 2244(d)(1), greatly changed the practical impact of *Rose*'s total exhaustion principle. AEDPA's one-year limitations period meant that petitioners whose mixed petitions were dismissed under *Rose* ran the risk of being time-barred from bringing their claims again, once exhausted, in federal court. To address this problem, this Circuit developed a three-step procedure for mixed petitions, allowing (1) a petitioner to amend his petition to delete any unexhausted claims; (2) the court in its discretion to stay and hold in abeyance the amended, fully exhausted petition, providing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) once the claims have been exhausted in state court, the petitioner to return to federal court and amends his federal petition to include the newly-exhausted claims. *See Taylor*, 134 F.3d at 986. We have reaffirmed *Taylor*'s three step stay-and-abeyance procedure several times in the ten years since it was first articulated. *See, e.g.*, *Robbins v. Carey*, 481 F.3d 1143, 1148-49 (9th Cir. 2007); *Kelly*, 315 F.3d at 1070-71, *overruled on other grounds by Robbins*, 481 F.3d at 1049;[4] *James v. Pliler*, 269 F.3d 1124, 1127 (9th Cir. 2001) (holding that the decision to hold an exhausted petition in abeyance is a matter of trial court's discretion).

**[3]** In *Kelly*, this Court expressed concern that circumstances might arise in which the "outright dismissal [of a mixed petition would] render it unlikely or impossible for the petitioner to return to federal court within the one-year limita-

---

[4]*Robbins* reaffirmed *Kelly* but rejected the requirement that district courts *sua sponte* consider implementing the three-step procedure.

tion period imposed by [AEDPA]." 315 F.3d at 1070. To avoid this problem, we joined "the 'growing consensus' in recognizing the clear appropriateness of a stay when valid claims would otherwise be forfeited." *Id.*; *see also Olvera v. Giurbino*, 371 F.3d 569, 574 (9th Cir. 2004) (finding an abuse of discretion where the district court failed to grant a stay if the petitioner could not have exhausted his claims and returned to federal court within AEDPA's deadline).

**[4]** Three years after *Kelly*, the Supreme Court, in *Rhines*, considered "whether a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then return to federal court for review of his perfected petition." *Rhines*, 544 U.S. at 271-72. Given the interplay between *Rose* and AEDPA, and the consequent need to protect against the risk that habeas petitioners with mixed petitions might "forever los[e] their opportunity for any federal review of their unexhausted claims," *id.* at 275, *Rhines* carved out "limited circumstances" in which it is within the district court's discretion to grant a stay of a mixed petition. *Id.* at 277. *Rhines* cautioned, however, that its stay procedure must not run afoul of AEDPA's twin purposes — "reduc[ing] delays in the execution of state and federal criminal sentences," *id.* at 276 (internal quotation marks and citations omitted), and "encourag[ing] petitioners to seek relief from state courts in the first instance." *Id.* To address these concerns, *Rhines* held that "stay-and-abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Furthermore, *Rhines* held stays inappropriate when the unexhausted claims are "plainly meritless," or where the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id.* at 277-78.

Shortly after *Rhines*, in *Jackson v. Roe*, 425 F.3d 654 (9th Cir. 2005), this Court noted the important distinctions between the *Rhines* and *Kelly* procedures. As *Jackson*

explained, *Rhines* allows a district court to stay a *mixed* petition, and does not require that unexhausted claims be dismissed while the petitioner attempts to exhaust them in state court. In contrast, the three-step procedure outlined in *Kelly* allows the stay of *fully exhausted* petitions, requiring that any unexhausted claims be dismissed. *Id.* at 661. Because the petitioner in *Jackson* attempted to use the *Rhines* procedure, we had no occasion to decide whether the *Kelly* procedure remains available after *Rhines*. Although we noted that "because *Rhines* . . . authorize[s] stays of mixed petitions, albeit in limited circumstances, the three-step procedure may fall into disuse," *id.* at 661 n.10, we "[left] for another day the question of whether the stay standard announced by the Supreme Court in *Rhines* applies to [the] three-step [*Kelly*] procedure." *Id.* at 661.

### III.

The case now before us picks up where *Jackson* left off. King argues that the district court erred in refusing to allow him to use the three-step procedure outlined in *Kelly* and *Taylor*. He maintains that the district court should have allowed him to dismiss his unexhausted claims, stay his fully exhausted petition, and file an amended petition containing all his claims once they had been exhausted, without requiring a showing of good cause for his failure to exhaust earlier. For the reasons explained below, we reiterate that the *Kelly* procedure remains available after *Rhines* and hold that its availability is not premised upon a showing of good cause.

**[5]** As we recognized in *Jackson*, "*Rhines* did *not* . . . comment on the validity of the three-step stay-and-abeyance procedure approved in *Taylor* and *Kelly*." 425 F.3d at 661. Although the *Kelly* procedure may appear to be nothing more than a more cumbersome version of *Rhines* that requires the dismissal and then the re-amendment of the unexhausted claims, we cautioned in *Jackson* that "[t]he two approaches are distinct: *Rhines* applies to stays of *mixed* petitions,

whereas the three-step procedure applies to stays of *fully exhausted* petitions . . . ." *Id.* We reaffirmed this observation in *Robbins*, noting that *Rhines* "approved a version of the stay-and-abeyance procedure." 481 F.3d at 1149 (footnote omitted). We also held that "[the *Kelly* procedure] remains in place for district courts" after *Rhines. Id.* at 1148. Although *Robbins* held that the *Kelly* procedure survives *Rhines*, it did not directly address whether the *Rhines* "good cause" limitation applied to the *Kelly* procedure. We address that question now and decide that it does not.

**[6]** *Rhines* carved out an exception to *Rose*'s total exhaustion rule, allowing a mixed petition to remain pending in federal court under limited circumstances. When implemented, the *Rhines* exception eliminates entirely any limitations issue with regard to the originally unexhausted claims, as the claims remain pending in federal court throughout. It was to prevent abuse of this special dispensation, and to preserve the central purposes of the total exhaustion rule (avoiding delay and piecemeal litigation), that the Supreme Court in *Rhines* limited the availability of the exception to circumstances in which the petitioner had good cause for his failure to exhaust all his claims in state court before filing his federal habeas petition.

**[7]** In contrast, the *Kelly* procedure, because it does not leave a mixed petition pending, does not sanction any exception to *Rose* and so does not present the same dangers of abuse. Indeed, *Kelly* is not only a more cumbersome procedure for petitioners, but also a riskier one. A petitioner seeking to use the *Kelly* procedure will be able to amend his unexhausted claims back into his federal petition once he has exhausted them only if those claims are determined to be timely. And demonstrating timeliness will often be problematic under the now-applicable legal principles.

**[8]** Under *Duncan v. Walker*, 533 U.S. 167 (2001), the filing of a petition for federal habeas corpus relief does not toll

AEDPA's statute of limitations (unlike an application for *state* habeas corpus relief, which does). *Id.* at 172. Additionally, *Mayle* provides that a petitioner may amend a new claim into a pending federal habeas petition after the expiration of the limitations period only if the new claim shares a "common core of operative facts" with the claims in the pending petition, *Mayle*, 545 U.S. at 659; a new claim does not "relate back" to the filing of an exhausted petition simply because it arises from "the same trial, conviction, or sentence." *Id.* at 662-64. Because the *Kelly* procedure requires petitioners to dismiss their unexhausted claims and then attempt to add them back into the federal complaint later, the *Kelly* procedure, unlike the *Rhines* procedure, does nothing to protect a petitioner's unexhausted claims from untimeliness in the interim. And *Duncan* and *Mayle*, taken together, make demonstrating timeliness of claims amended into federal habeas petitions after exhaustion often problematic.

**[9]** Given these strictures, the *Kelly* procedure is therefore unlikely to be abused by late-filing habeas petitioners who have not exhausted all of their federal claims and for whom the expiration of AEDPA's one-year limitations period is imminent. Nor does the *Kelly* procedure involve any exceptional judicial action. It is in part an exercise of litigants' usual prerogative, specifically recognized in *Rose*, to amend complaints if they can do so to make them cognizable in federal court, *see Rose*, 455 U.S. at 520 ("[The petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims."), and in part an exercise of the equally normal discretion of federal courts to control the timing of decision in cases pending before them. *See O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir. 1995) ("[T]he district courts are entitled to discretion in managing cases within the federal system.").

**[10]** In short, nothing about the *Kelly* procedure goes sufficiently beyond normal court procedures or raises such elevated concerns about possible abuse to require the imposition

of a special standard such as "good cause." We therefore hold that district courts retain the same degree of discretion they had before *Rhines* to implement the *Kelly* procedure, particularly when "outright dismissal [of an entire mixed petition would] render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA]." *Kelly*, 315 F.3d at 1070. We further reiterate the "clear appropriateness of a stay when valid claims would otherwise be forfeited." *Id.*

## IV.

So holding does not decide the case in King's favor, however. As we noted in *Jackson*, and as we recognize again here, "the Supreme Court's . . . decision in *Mayle*, imposing stricter limitations than previously required by this court for amendments to relate back to the original filing date, is likely to make . . . [the *Kelly*] approach less useful for petitioners in many instances." 425 F.3d at 661 n.10. The case now before us is one such instance. Indeed, the district court recognized as much when it refused to invoke the *Kelly* procedure as King requested, noting that *Mayle* "might significantly limit [King's] ability" to amend his nine initially unexhausted claims back into his federal petition. Furthermore, in the district court's subsequent order of January 6, 2006, denying King's motion for leave to file a first amended petition pursuant to FRCP 15(a) (which was filed subsequent to and independent from King's motion requesting a stay and abeyance under *Kelly*), the district court held more explicitly that "after examining petitioner's exhausted and unexhausted claims, it does not appear that any of petitioner's unexhausted claims would relate back to the date of petitioner's original filing, as the one exhausted claim and the nine unexhausted claims are not tied to a common core of operative facts."

King challenges in only one respect the district court's finding that his claims do not relate back under *Mayle*: he urges that *Mayle* is satisfied so long as his new claims are

related to any of the claims that appeared (properly or not) in the original petition he filed with the district court. Because King's nine new claims are the same as the nine unexhausted claims he attempted to include in his original petition, he asserts, the new claims are sufficiently related to the original filing date to be considered timely under *Mayle*.

We disagree. The only sensible interpretation of *Mayle* is that it requires new claims to relate back to claims properly contained in the original petition — that is, those claims that were exhausted at the time of filing. Only this interpretation of *Mayle* comports with *Duncan*'s reasoning about the goal of exhaustion in habeas cases. Wary of "creat[ing] . . . opportunities for delay and piecemeal litigation without advancing the goals of comity and federalism that the exhaustion requirement serves," 533 U.S. at 180, *Duncan* concluded that AEDPA's statute of limitations period must continue to run while federal habeas proceedings are pending. 533 U.S. at 172. "By tolling the limitation period for the pursuit of state remedies and not during the pendency of applications for federal review," *Duncan* reasoned, "[we] provide[ ] a powerful incentive for litigants to exhaust all available state remedies before proceeding in the lower federal courts." *Id*. at 180. Reading *Mayle* to permit post-exhaustion amendments to "relate back" to any claims included in but then dismissed from the original complaint, as King suggests we should, would be equivalent to abandoning *Duncan* and simply tolling AEDPA's limitations period for the entire period during which a petitioner has a petition pending in federal court, so long as the petitioner had the foresight to include all of his unexhausted claims in the petition when he initially filed it.

**[11]** Rejecting such a self-defeating interpretation, we hold that *Mayle* requires a comparison of a petitioner's new claims to the properly exhausted claims left pending in federal court, not to any earlier version of the complaint containing claims subsequently dismissed for failure to exhaust. *Cf. Raspberry v. Garcia*, 448 F.3d 1150 (9th Cir. 2006) (holding that a

habeas petition filed after the district court dismissed a previous petition without prejudice for failure to exhaust state court remedies does not automatically "relate back" to the filing date of the original petition). *Mayle* thus requires a more detailed inquiry than King suggests. The question is whether his nine newly exhausted claims relate back to the one claim in his original habeas petition that was exhausted to begin with — King's claim that he was denied his due process right to a fair trial because there was insufficient evidence to sustain the twenty-year gun enhancement applied to his sentence.

**[12]** Critically, King in his briefs before this court does not address the relevant *Mayle* question, making no attempt to argue that his nine previously unexhausted claims share a "common core of operative facts" with his one exhausted claim. *Mayle*, 545 U.S. at 659. As King has therefore waived any challenge to the district court's holding that his new claims do not relate back to his original exhausted claim, we do not disturb that holding.

## Conclusion

In sum, we hold that the three-step stay-and-abeyance procedure outlined in *Kelly* remains available. Although this procedure might not be as useful for petitioners today in avoiding untimeliness as it was when *Kelly* was decided, district courts still maintain discretion to implement *Kelly*'s three-step stay-and-abeyance procedure, particularly when "outright dismissal [of a mixed petition would] render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA]." *Kelly*, 315 F.3d at 1070. The propriety of this option does not turn on the petitioner showing good cause for his failure to exhaust state court remedies. Instead, a petitioner may invoke *Kelly*'s three-step procedure subject only to the requirement that the amendment of any newly exhausted claims back into the petition must satisfy *Mayle*, 545 U.S. at 650. Because the district court found that King did not satisfy *Mayle*, and the sole chal-

lenge King raises is based on an erroneous reading of *Mayle*, we affirm the district court.

**AFFIRMED**.